[L. A. No. 1587.  In Bank.—August 29, 1904.]

## J. M. ELLIOTT et al., Petitioners, v. SUPERIOR COURT OF SAN DIEGO COUNTY et al., Respondents.

CERTIORARI—ORDERS OF SUPERIOR COURT—PAYMENT OF ATTORNEY FEES BY RECEIVER—REMEDY BY APPEAL.—*Certiorari* does not lie to review orders of the superior court directing a receiver in an equity case to pay counsel fees, if there is a remedy by appeal therefrom.

ID.—PARTIES—REMEDY OF STRANGERS TO RECORD.—A writ of *certiorari* to review any judgment or order of the superior court can only be granted in favor of parties to the record, and not in favor of strangers thereto, who have no direct right of appeal. Such strangers, if injuriously affected, have a plain, speedy, and adequate remedy. They may make themselves parties to the record, by motion to set aside the judgment or orders complained of, and, if an order denying the motion be appealable, by appeal therefrom, upon which any error or excess of jurisdiction may be reviewed; or if the order be not appealable, it may then be reviewed upon *certiorari*.

ID.—STRANGERS NOT MADE PARTIES—CONTRACT EMBODIED IN ORDER—INTERVENTION IN SPECIAL PROCEEDING BY RECEIVER.—Strangers to an action do not become parties of record thereto by being parties to a contract, though it is embodied in an order of the court; nor do they become parties to the action by intervention in a special proceeding upon application of the receiver for leave to install a cyanide plant to work the tailings of mining claims involved in the action.

ID.—DISMISSAL OF PETITION WITHOUT PREJUDICE.—The petition of strangers to the record for a writ of *certiorari* will be dismissed without prejudice to the remedy by motion and appeal.

PETITION for Writ of Certiorari to review orders of the Superior Court of San Diego County.  E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

James A. Gibson, William J. Hunsaker, and Hunsaker & Britt, for Petitioners.

Garoutte & Goodwin, for E. S. Torrance, Judge of the Superior Court, Respondent.

Shirley C. Ward, for Jefferson Chandler and J. Wade McDonald, Respondents.

Samuel M. Shortridge, Respondent, *in pro. per.*

BEATTY, C. J.—The petitioners herein seek a review upon *certiorari* of certain orders of the superior court of San Diego County made after final judgment, in a cause entitled Free Gold Mining Company (a corporation), Plaintiff, *v.* Spiers et al., Defendants.

Upon the filing of the petition, an order was made requiring the respondent to show cause why a writ of *certiorari* should not issue as prayed. At the appointed time the judge of the superior court and the parties at whose instance and for whose benefit the orders in question were made appeared and severally demurred to the petition upon the ground that the facts alleged were insufficient to justify the issuance of the writ. One of the parties also assigned as additional ground of demurrer that the petitioners were without legal capacity to maintain the proceeding.

The petition, with its annexed exhibits, is voluminous, and the transactions which it details are intricate and confusing, but the essence of the matter may be sufficiently stated in comparatively brief space. The Golden Cross Mining and Milling Company (a corporation) was the owner of a number of mining claims in San Diego County, together with a quantity of mining machinery, lands, reduction-works, etc. Being largely indebted to James Spiers and others, the corporation, on the 4th of January, 1896, conveyed the whole of said property to Spiers and certain co-trustees for the purpose of securing its creditors. Spiers and his co-trustees, claiming the right so to do according to the terms of the trust, took possession of the property and undertook to operate it for the benefit of the creditors, but finding, as they alleged, that its operation resulted in a loss, they advertised it for sale. To save the property from being sold at a sacrifice by its trustees, the Golden Cross Company sold and conveyed it to another corporation—the Free Gold Mining and Milling Company—which, in consideration of the conveyance, agreed to pay all the debts of the Golden Cross Company to Spiers and others, and to pay to that corporation one million dollars in addition, which payment was secured by a lien expressly reserved in the deed of conveyance. As a part of the same transaction the Golden Cross Company also assigned and transferred to the Free Gold Company all its claims, demands, and causes of action against Spiers and his co-trustees for damages resulting

from their alleged wrongful acts in taking the property into their possession, and injuring and impairing its value by wasteful, unskillful, and negligent methods of operation. Upon receiving this conveyance and assignment the Free Gold Company commenced the action against Spiers and the other trustees in the course of which the orders in question here purport to have been made.

The complaint in said action contained a number of counts setting forth different causes of action, and prayed judgment for the recovery of possession of the property, quieting the title thereto, and damages. It prayed also for an injunction *pendente lite* and for the appointment of a receiver. Upon the filing of the complaint a receiver was appointed, with authority to operate the mines and works. Before any trial of the cause the parties to the action settled all the matters in controversy between them by a compromise agreement dated the twenty-sixth day of November, 1897. By this agreement the plaintiff released the defendants from all claims for damages, and undertook to pay the reasonable fees of their attorneys in the action. The several amounts due to the creditors represented by Spiers and his co-trustees were ascertained and scheduled, and a list was made of certain other creditors whose claims were to be paid by the Golden Cross and Free Gold companies directly and without the intervention of the trustees or receiver. Finally it was agreed that the receivership should be continued until all the creditors represented by Spiers and his co-trustees were paid in full, after which the property remaining in the hands of the receiver should be restored to the possession of the plaintiff the Free Gold Company. By a supplemental agreement the claims of certain other creditors were adjusted and put upon the same footing as those previously represented by the trustees, and the order of payment as between these creditors and those to be paid directly by the Free Gold and Golden Cross companies was settled. Preference was given to the former to the extent of five per cent of their respective claims on each monthly dividend, and if any surplus remained to be divided the latter were to share *pro rata* in the surplus. To these agreements the Golden Cross Company and the deferred creditors (T. S. Fuller, Mrs. E. C. Fuller, and Mary E. Hedges,—petitioners herein) assented, and they were em-

bodied in and became orders of court in the said action of Free Gold Company *v.* Spiers et al. In pursuance of these orders the successive receivers in the cause have operated the properties, and out of the net proceeds have paid in full the claims of the creditors represented by the defendants Spiers and his co-trustees. It is not directly alleged that the claims of the Fullers and Mary E. Hedges have not been paid, but it appears inferentially that a portion at least of their respective claims is still unsatisfied. No part of the million dollars purchase money payable to the Golden Cross Company has been paid, and that claim, together with the lien reserved for its security, is held by the petitioner J. M. Elliott under an assignment in trust for certain creditors of the Golden Cross Company and its stockholders.

On May 21, 1903, all the creditors represented by Spiers and his co-trustees having been fully paid, and they having executed a reconveyance of the property held by them in trust, a final judgment was entered in the action of Free Gold Company v. Spiers et al., in accordance with the agreement of November, 1897, and the supplemental agreement of April, 1898, and the orders of court based thereon.

By this judgment Spiers and his co-defendants were exonerated from all claims for damages, etc., and the title of the Free Gold Company to all the property mentioned and described in the several deeds of trust was quieted. Though expressly made final as between the parties, the judgment contained the following reservation: "But as to the pending receivership, the creditors of Isaac Trumbo's late receivership, all matters of administration, accounting, dealing, and transactions of the present receiver, Pauly, this cause and jurisdiction thereof is hereby expressly retained, reserved, and continued for such further action, orders, and proceedings by and before this court as shall be meet and proper."

On March 18, 1904, an order was entered settling the final account of Charles W. Pauly as receiver. By this order he was directed to pay certain expenses of the receivership incurred by him, including his own compensation, to continue the operation of the mines and works until the thirtieth day of April, to make a clean-up on that date, and on the following day deliver possession of the mines and works to the Free Gold Company, and thereupon to make a further supple-

mental and final report, upon approval of which he would be discharged.

On March 23, 1904, Samuel M. Shortridge filed a petition asking the court to make an order ascertaining and allowing to him a reasonable compensation for his services as attorney for Trumbo, who had acted as receiver from September, 1889, to April, 1901, and directing payment of the same by receiver Pauly out of the funds in his hands.

April 4, 1904, Jefferson Chandler filed a petition setting out the nature and value of his services as attorney for the plaintiff in the action, the Free Gold Company, and asking the court to determine the amount justly due to him as compensation for said services, and to make an order requiring payment of the same by the receiver, and continuing the receivership until the sum so fixed should be paid.

On the ninth day of April, 1904, these applications came on to be heard without notice to any of these petitioners. At the time of said hearing, without filing any petitions, and likewise without notice to any of these petitioners, Samuel M. Shortridge and J. Wade McDonald appeared and moved the court to ascertain, allow, and order paid to them the value of their services as attorneys for the plaintiff in the action.

The court thereupon made and entered an order allowing Shortridge $4,500 for his services as attorney for Trumbo, and ordered the same paid forthwith out of the funds then in the hands of the receiver.

By a separate order it was found that the reasonable value of the services of Chandler, as attorney for plaintiff, was $15,000, of Shortridge $10,000, of McDonald $2,500, and the receiver was ordered to pay these sums, aggregating $27,500, out of the proceeds of the property in his hands, and the receivership was continued in force until such payment should be made, the former order terminating the receivership on the 30th of April being modified accordingly.

These two orders of April 9th allowing Shortridge $4,500 as attorney for receiver Trumbo, and Chandler, Shortridge, and McDonald $27,500, as attorneys for the plaintiff, and prolonging the receivership to enable the receiver to realize from the working of the mines funds sufficient to pay the same, are the orders which the petitioners herein seek to have

reviewed upon the ground that the superior court, in making them, exceeded its jurisdiction.

In support of their demurrers the respondents urge various objections to the proceedings by *certiorari*. In the first place they say the petitioners either are parties to the action of the Free Gold Company *v.* Spiers et al., or they are not; that if they are parties to that action within the meaning of section 938 of the Code of Civil Procedure they have an undoubted right to appeal from these orders made after final judgment, and even if they are not parties to the action, if they are parties to the special proceedings to obtain the allowance of attorneys' fees, they have an equally unquestionable right of appeal from the orders requiring the receiver to pay the allowances out of the funds in his hands, because such orders are in effect judgments against them in a collateral proceeding growing out of the action, as was held in *Grant* v. *Superior Court*, 106 Cal. 324, and *Los Angeles* v. *Water Co.*, 134 Cal. 121, and if they can appeal from the orders they cannot invoke a review upon *certiorari*. (Code Civ. Proc., sec. 1068.) If, on the other hand, the petitioners are not parties to the proceedings or to the action, then, it is contended, though they may be *persons* aggrieved by the orders, they are not *parties* beneficially interested in having them annulled, and for that reason cannot proceed by *certiorari*.

There is no doubt that a right of appeal excludes the right to proceed by *certiorari*, and it is equally clear that if the petitioners are parties to the action or the proceeding they have the right of appeal. But there is nothing in the petition which lends any support to the claim that the petitioners are parties within the meaning of section 938 of the Code of Civil Procedure as it has been construed in a series of decisions of this court, commencing with the *dictum* in *Senter* v. *De Bernal*, 38 Cal. 637, and coming down as late as *Estate of McDermott*, 127 Cal. 450. A review of these cases would perhaps not disclose any very satisfactory reason for construing section 938 so narrowly as to deny the right of direct appeal from an order or judgment to any person shown by the record to be injuriously affected by it, especially when it is void on its face. When not void on its face a right of direct appeal would be of no value to a person not a party, because he would have had no opportunity of getting into the record

the matters necessary to show error or excess of jurisdiction. But it has been settled as a rule of practice by a long series of decisions that only a *party to the record* can appeal, and other rules of practice equally well settled have remedied any inconvenience that might have resulted from this construction of section 938, so that there is no reason now to depart from it, if there ever was. These petitioners do not appear, from the allegations of their petition, ever to have been parties to the record, either of the action or the proceedings resulting in the orders of which they seek a review. They did, it is true, assent to and ratify the agreements of November, 1897, and April, 1898, which were filed as stipulations in the action of Free Gold Company *v.* Spiers et al., and embodied in orders of the court, but they did not thereby become parties to that action. Their assent to those agreements was not given for the purpose of placing themselves and all their interest in the property in controversy within the jurisdiction of the court, or even of authorizing the entry of the orders, but merely for the purpose of making the contract between the parties effective and binding so far, and only so far, as it affected their interest in the property. In other words, they made themselves parties to the contract, but not parties to the action. Respondents in their argument on this point call attention to some matters which do not appear in the petition and cannot be noticed in dealing with the demurrers. But even if these matters could be considered, they would not affect our conclusion. The records of this court show that certain appeals have been prosecuted by some of the petitioners from an order made in the action of *Free Gold Company* v. *Spiers,* 135 Cal. 130; 136 Cal. 484. It appears from these cases that during the time Trumbo was acting as receiver some of the petitioners were allowed to intervene in opposition to his application for leave to install a cyanide plant for working the tailings from the reduction-works, and they took their several appeals from the order granting the application. But this intervention was only in that special proceeding. It did not make them parties to the action generally; and did not, of course, make them parties to another special and collateral proceeding in the action. Nor did their consent given to the order settling Trumbo's account make them parties to the action, or to any

proceeding except that in which they specially intervened. This evidently was the view of respondents themselves, for if they had regarded these petitioners as parties to the action, or proper parties to the proceedings, they would not have taken the orders in question without notice to them.

It is clear, we think, that the petitioners are not parties to the record, and that they have no right to prosecute a direct appeal from these orders.

This brings us to the alternative proposition of the respondents, that if only parties to the record are allowed to appeal under section 938 of the Code of Civil Procedure, then none but parties to the record can invoke the remedy by *certiorari* under section 1069; for they contend the word *"party"* must be construed in the same way in both connections. By section 938 a "party aggrieved" may appeal, and by section 1069 the "party beneficially interested" may sue out a writ of review. The contention is, that if "party" in one section means party to the record of the proceeding to be reviewed, it can mean nothing less in the other. The conclusiveness of this argument, however, depends upon the assumption that the legislature in the various sections of the code regulating the practice in special proceedings has chosen its language with critical discrimination. But a comparison of different portions of the statute shows that it has not done so.

By section 1086 it is provided that the writ of mandate must issue "upon application of the *party* beneficially interested." The provision indeed is substantially identical with that relating to the writ of review; yet no one would claim that in this connection "party" means a party on the record of an action or proceeding to which the writ of mandate is auxiliary or corrective, for ordinarily there is no such action or proceeding. To determine the true meaning of the word "party," therefore, as used in section 1069, it is necessary to look to the decisions in this and other jurisdictions defining the class of persons entitled to the remedy by *certiorari*. Upon this precise point we have not been greatly aided by the briefs of counsel, but we find by reference to the cases cited in the Encyclopædia, and by the text-writers, that the great preponderance of authority sustains the proposition that the writ will not be granted to a stranger to the record, when the

matter to be reviewed is the judgment or order of a court made or entered in a cause litigated *inter partes.*

There is, a class of cases, like *Maxwell* v. *Supervisors,* 53 Cal. 389, in which the writ has been awarded to a taxpayer to review the orders of bodies like the board of supervisors when acting judicially in matters affecting the whole body of taxpayers, and by which all are bound. These cases, however, seem to be exceptional, there being no formal parties, and no appeal or other remedy for an excess of jurisdiction, a review upon *certiorari* is allowed to those who are substantially the parties and who are bound by the proceedings. Another exceptional class of cases are those which have arisen under special statutes extending the remedy.

These grounds of exception, however, have no application here, and we cannot find in the decisions of this court a single case in which *certiorari* to review a judgment or order of a court has been issued at the suit of a stranger to the record. There is in fact another plain, speedy, and adequate remedy allowed by our practice to one whose rights or interests are injuriously affected by the judgment or by any appealable order of a court given or made in an action or proceeding to which he is not a party. He may make himself a party by moving to set aside such judgment or order, and if his motion is denied may, on appeal from that order, have the proceeding of which he complains reviewed not only for excess of jurisdiction but for error. (*People* v. *Grant,* 45 Cal. 97; *Green* v. *Hebbard,* 95 Cal. 39; *Pignaz* v. *Burnett,* 119 Cal. 157; *Credits Com. Co.* v. *Superior Court,* 140 Cal. 82.) It is true that in one respect this remedy is less efficacious than that by *certiorari,* for neither the motion nor the appeal stays the enforcement of a void order unless this court, in the exercise of its inherent power, should approve a stay-bond. (*Credits Com. Co.* v. *Superior Court,* 140 Cal. 82.) But while this is an inconvenience to the party compelled to appeal, there is always the opportunity of obtaining a stay in a proper case, and the possible injury from this cause is perhaps no greater or more to be apprehended than the injury to the party claiming the benefit of an order or judgment when its enforcement is stayed by *certiorari* without any undertaking to indemnify him. In case of an order or judgment in excess of jurisdiction but not appealable, and therefore reviewable only upon *cer-*

*tiorari,* the remedy could be made available to any stranger to the record injuriously affected, by a resort to the same method of moving to set it aside, and thereby making himself a party. And this is a practice to be commended and encouraged for its convenience; for it is to be presumed that, the attention of the court being drawn to its excess of jurisdiction, the order or judgment would be vacated on motion without the trouble and expense of certifying the record to a court of review.

Our conclusion on this point renders it unnecessary to consider other objections to the proceeding, and precludes a decision upon the merits of the controversy.

The demurrers to the petition are sustained and the proceeding dismissed without prejudice to the right to proceed by motion and appeal.

Angellotti, J., Van Dyke, J., McFarland, J., Lorigan, J., Henshaw, J., and Shaw, J., concurred.