(December 30, 1907.)

## NELSON BENNETT CO. and ALEXANDER TOPONCE, Respondents, v. TWIN FALLS LAND & WATER CO. et al., Appellants.

[92 Pac. 980.]

APPEAL—ADVERSE PARTY—SERVICE OF NOTICE.

1. Revised Statutes, section 4808, requires that a notice of appeal shall be served upon the adverse party. "Adverse party," as used in this section, means any party who would be prejudicially affected by a reversal of the judgment, a party who has an interest in conflict with a reversal of the judgment.

2. Where R. and C. were made defendants in an action to recover for labor and to foreclose a lien, and facts are not alleged showing an indebtedness due said R. & C., or that they claimed or were entitled to a lien, and they filed no pleading in said cause, or set forth their lien in any manner, and the court made no finding in their favor, or against them, and the judgment in no way granted them any right or gave them anything, or denied them any claim or right, and it affirmatively appears from the record that such parties would not be prejudicially affected by a reversal of the judgment: *Held*, that even though they appeared by general appearance only, in said action, they were not entitled to any notice of an appeal from the judgment.

(Syllabus by the court.)

APPEAL from the District Court of Fourth Judicial District for Cassia County.   Hon. Lyttleton Price, Judge.

Action to foreclose laborer's lien.   Judgment for plaintiff. Defendant appealed.   Motion to dismiss appeal.   *Motion overruled.*

Henderson, Pierce, Critchlow & Barrette, and S. H. Hays, for Appellants.

It nowhere appears that Ryberg & Carleson ever filed any pleadings or took part in the case in any manner.   Appellant never at any time was served with pleadings on the part of Ryberg & Carleson, nor was it required to serve any plead-

ings upon them. So far as it appears from this record, they were mentioned in the complaint as being parties who had some possible claim against Nelson Bennett Company, and a possible lien of some sort for work not described upon property not described, but were made parties in order that if they chose they might appear and have their rights litigated with those of Nelson Bennett Company, the original contractors. They are not adverse parties to the suit who could be in any manner affected by a modification or reversal of the decree herein. The allegations of the complaint are not sufficient to even bring them into court as parties adversary to the plaintiff Nelson Bennett Company, or to any other party in the suit.

Under the circumstances, Ryberg & Carleson were unnecessary parties, and as such, even under the rule adhered to in Idaho, California, and Oregon, it was not necessary to serve them with notice of appeal, since no personal judgment was sought against them and no relief was asked or granted in respect to them. (*Hand Mfg. Co. v. Marks,* 36 Or. 523, 52 Pac. 512; *Cooper Mfg. Co. v. Delahunt,* 36 Or. 402, 51 Pac. 649.)

The supreme court of California indicates in *Williams v. Mining Assn.,* 66 Cal. 195, 5 Pac. 85, and in *Vincent v. Collins,* 122 Cal. 387, 55 Pac. 130, that it is parties whose rights have been ascertained and fully determined by the judgment who must be served with notice of appeal, and that otherwise the appellate court would have no jurisdiction to modify or reverse the judgment. (*Kenney v. Parks,* 120 Cal. 22, 52 Pac. 40.)

The supreme court of this state has fully considered the true construction to be given to section 4808. (*Aulbach v. Dahler,* 4 Idaho, 522, 43 Pac. 192.)

In the case at bar, however, there was not only no judgment rendered against Ryberg & Carleson to be affected by this appeal, but there were no allegations in the complaint indicating that any judgment could be entered or could stand if rendered. The latest case in this court is *Titiman v. Alamance Min. Co.,* 9 Idaho, 240, 74 Pac. 529. The court restates

the doctrine as to the requirements of section 4808 as to service of notice of appeal, and explains the latter portion of the opinion in *Aulbach v. Dahler.* It adheres to the requirement that notice of appeal must be served upon every party who would be affected by a modification or reversal of the judgment appealed from.

It cannot be claimed that the rights of Ryberg & Carleson, if they ever had any, can be prejudiced by any modification or by the reversal of the judgment and decree herein. There certainly is nothing in the suit at bar which would operate by way of estoppel against Ryberg & Carleson, either in behalf of Toponce, Twin Falls Land and Water Company or Nelson Bennett Company.

Marshall K. Snell, Bertha M. Snell, and H. H. Henderson, for Respondents.

No notice of appeal was served upon defendants Ryberg & Carleson, and the time for giving such notice having long since expired, this court has acquired no jurisdiction of this cause of appeal, for any decision it might render herein would affect such parties, and therefore, this appeal should be dismissed. (*Titiman v. Alamance Min. Co.,* 9 Idaho, 240, 74 Pac. 529; *Baker v. Drews,* 9 Idaho, 276, 74 Pac. 1130.)

In the cases cited in which this court has made its rule, there was no appearance on the part of the particular parties referred to, but the court nevertheless held that having been shown to be adverse parties who would be affected by a reversal or modification of the decree appealed from, they should have been served with notice of appeal. In the case at bar, the defendants Ryberg & Carleson and Filer & De-Long were doubly entitled to notice of appeal, not only because they were interested or adverse parties in the contemplation of the law, but also because they had duly appeared, filed their appearance, had their attorneys of record, and were entitled to notice under section 4892, Revised Statutes of 1887.

The amended complaint (paragraphs 20, 51-53) affirmatively shows Ryberg & Carleson had a valid and existing

prior lien, and appellant admits this in its answer (196, 216) and does not deny that they are necessary parties (199).

The case of *Mills v. Smiley*, 9 Idaho, 317, 325, 76 Pac. 783, 325, distinguishes and clarifies the rule laid down in the *Titiman-Alamance* case.

Every defendant who has appeared in an action is entitled to notice of all subsequent proceedings, of which notice is required to be given. (Rev. Stats., sec. 4892; *Cummings v. Steele*, 6 Idaho, 666, 59 Pac. 15.)

The term "adverse party" is further defined in *Kerns v. Morgan*, 11 Idaho, 580, 83 Pac. 954, as "a party to the original action."

"In the matter (appeal) the appellant cannot choose for himself against whom he will proceed for a review on appeal; he must conform to the requirements of the statute." (Spelling on New Trial and Appellate Practice, sec. 536.)

"When a defendant has appeared in an action he is entitled to notice of all subsequent proceedings had therein which in any respect affect his rights and interests." (2 Ency. of Pl. & Pr. 604.)

"The record must affirmatively show the service of the notice of appeal on the adverse party or his attorneys." This provision is mandatory, and the record must affirmatively show that it has been complied with to give this court jurisdiction. (*Adams v. McPherson*, 2 Idaho, 855, 27 Pac. 577.)

In California, Oregon, Utah and Montana, a similar, and in some cases an identical, statute as to service of notice of appeal exists, and we cite the following leading cases: *Bank of Ogden v. U. S. Sav. & Loan Co.*, 13 Utah, 189, 44 Pac. 1043; *Stephens v. Stevens*, 27 Utah, 261, 75 Pac. 619; *Senter v. De Bernal*, 38 Cal. 637; *O'Kane v. Daly*, 63 Cal. 317; *Millikin v. Houghton*, 75 Cal. 539, 17 Pac. 641; *Reed v. Allison*, 61 Cal. 461; *Toy v. Railway Co.*, 75 Cal. 542, 17 Pac. 700; *Hibernia Sav. Soc. v. Lewis*, 111 Cal. 519, 44 Pac. 175; *Bullock v. Tayler*, 112 Cal. 147, 44 Pac. 457; *Bowering v. Adams*, 126 Cal. 653, 59 Pac. 134; *McDonald v. Backus*, 45 Cal. 262; *Moody v. Miller*, 24 Or. 179, 33 Pac. 402; *The Victorian*, 24 Or. 121, 41 Am. St. Rep. 838, 32 Pac. 1040; *Osborn v. Logus*,

Dec. 1907.] ·Nelson Bennett Co. *v.* Twin Falls etc. Co.  771

Opinion of the Court—Stewart, J.

28 Or. 302, 37 Pac. 456; *Jackson Co. v. Bloomer*, 28 Or. 110, 41 Pac. 930; *Power & Bro. v. Murphy*, 26 Mont. 387, 68 Pac. 411; *Lancaster v. Maxwell*, 103 Cal. 67, 36 Pac. 951; *Pacific Mutual Life Ins. Co. v. Fisher*, 106 Cal. 224, 39 Pac. 758.

STEWART, J.—The respondent moves to dismiss the appeal herein upon the ground that notice of appeal was not served upon Ryberg & Carleson, defendants named in the complaint. Revised Statutes, section 4808, requires that a notice of appeal shall be served upon the "adverse party" or his attorney. If Ryberg & Carleson were adverse parties within the meaning of this statute, then the appeal should be dismissed, as it is admitted a notice of appeal was not served upon them.

"Adverse parties upon whom notice of appeal must be served are such parties as a reversal of judgment would affect." (*Aulbach v. Dahler*, 4 Idaho, 522, 43 Pac. 192; *Titiman v. Alamance Min. Co.*, 9 Idaho, 240, 74 Pac. 529.) The words "would affect," as used in these two decisions, mean "adversely affect." The statute intends that a notice of appeal should be served upon all parties who have an interest in conflict with a reversal of the judgment, or whose rights would be adversely affected by a reversal of such judgment. (Hayne on New Trial and Appeal, sec. 210; *Foley v. Bullard*, 97 Cal. 516, 32 Pac. 574; *United States v. Crooks*, 116 Cal. 43, 47 Pac. 870; *Elliott v. Superior Court*, 144 Cal. 501, 103 Am. St. Rep. 102, 77 Pac. 1109; 2 Spelling on New Trial and Appellate Practice, pp. 1143-1146; 1 Words and Phrases, p. 224; *The Victorian*, 24 Or. 121, 41 Am. St. Rep. 838, 32 Pac. 1040.) Where default is entered and the rights of the defendant cannot be prejudicially affected by further proceedings in the case, he is not entitled to any notice of such further proceedings. (23 Cyc. 754.)

Looking into the record for the purpose of determining the question as to whether or not it affirmatively appears that Ryberg & Carleson were adverse parties within the meaning of the statute, or would be prejudicially affected by a reversal, we find that Nelson Bennett Company commenced an

action against the Twin Falls Land and Water Company, a corporation, Alexander Toponce and Ryberg & Carleson, and Walter G. Filer and Martin B. DeLong, trustees, demanding judgment against the defendant Twin Falls Land and Water Company for $185,705.62, and interest and attorney fees and costs, and for a decree of court that plaintiff have a lien upon the canal of said defendant described in the complaint. and that said property may be sold under the decree of the court to satisfy said lien and judgment, and that all liens against said property be litigated and determined in this action; that Walter G. Filer and Martin B. DeLong, trustees, be decreed to have no right or claim in or to said property. The only allegations in this complaint as to the defendants Ryberg & Carleson are found in paragraph 20 of the complaint, as follows: ''That the defendants, Charles Ryberg and Gus Carleson, as Ryberg & Carleson, were likewise subcontractors under this plaintiff, and performed labor and furnished materials in the building of a certain portion of said canal; and as such they did heretofore and on September 24, 1904, file a lien with the county recorder of said Cassia county, Idaho, claiming the sum of $5,856.33 due them for work, and plaintiff alleges in respect thereto that said work was performed within the distance and upon that portion of the canal covered by this plaintiff's lien and described in this complaint, and is included herein, and that any amount which may be found due said Ryberg & Carleson upon their said lien is included in the amount due and owing this plaintiff, as principal contractor, and can and should be litigated and determined herein; that whatever amounts are found due and payable said Ryberg & Carleson should be satisfied out of the property included in and covered by this plaintiff's lien; that plaintiff has paid to said defendants Ryberg & Carleson all amounts by it, the said plaintiff, received from the defendant Twin Falls Land & Water Company on account of and allowed for said work of Ryberg & Carleson under the contract of employment between said Ryberg & Carleson and this plaintiff; and whatever amount is found to be due upon the lien and claim of said Ryberg &

Carleson should be deducted from the amount herein found due plaintiff, and decreed and distributed to said Ryberg & Carleson in this action.''

The Twin Falls Land and Water Company answered in this action and with reference to the allegations set forth against Ryberg & Carleson, admitted that Ryberg & Carleson were subcontractors under Nelson Bennett Company in the performance of certain work, but whether they were subcontractors under the work mentioned in the complaint and answer in this action, upon which the lien of Nelson Bennett Company was founded, they have no knowledge and therefore deny.   They further admit that Ryberg & Carleson filed a lien against the property and that they are now claiming and demanding payment of the sum of $5,856.33 from the defendants, alleging such amount is due from Nelson Bennett Company on account of work and labor performed, but as to the lien, they have no knowledge, neither do they know whether the plaintiff paid Ryberg & Carleson, and therefore they deny every allegation in respect to Ryberg & Carleson made by Nelson Bennett Company in its complaint.

Alexander Toponce filed a cross-complaint in this action but does not mention, in any way, the names of Ryberg & Carleson.   The cause was tried and the court made findings of fact and conclusions of law in which the only reference to Ryberg & Carleson is found at folio 536 of the transcript, as follows: ''Said Nelson Bennett Co. being an original contractor, and the said Alexander Toponce a subcontractor, and thereupon the hearing and trial of the above consolidated causes was commenced January 23rd, 1906, and had before the court without a jury, at which trial plaintiff Nelson Bennett Co. appeared by its attorneys, Marshall K. Snell, Bertha M. Snell and H. H. Henderson, and plaintiff Alexander Toponce appeared by his attorneys, Henderson & McMillan, and the defendants Ryberg & Carleson failed to appear and were in default.''

It may be stated, however, in this connection, that there is on file a written appearance on the part of Ryberg & Carle-

son by their attorney, but that such written appearance is the only paper filed in said cause by said Ryberg & Carleson.

Again, at folio 589, in its twenty-third finding, the court finds: ''The court finds that the defendants Ryberg & Carleson, subcontractors under said Nelson Bennett Co., failed to appear herein or to prosecute their lien and are in default.''

Again, at folio 610, in conclusion of law No. 5, the court finds that the defendants Ryberg & Carleson are in default.'' In the decree the names of Ryberg & Carleson were not in any way mentioned. Thus it will be seen that the pleadings do not put in issue any claim of Ryberg & Carleson. They do not appear in the action except by a general appearance. They failed to answer or file a cross-complaint, setting up any claim of lien or asking for any judgment. The court did not find that there was any sum due them; did not find that they had filed or were entitled to any lien upon said property, and made no finding whatever giving them any affirmative relief against the plaintiff or any of their codefendants. The court did not enter any decree against them in any way whatever; did not adjudge any rights in their favor or against them. So it will be seen that so far as the record in this case is concerned, Ryberg & Carleson, after the allegations in the complaint, were dismissed from further consideration in said cause; that the only reference to them thereafter was to the effect that they had made default and failed to prosecute their lien or any claim. By the judgment and findings, therefore, they were given nothing. They had no interest whatever in the judgment. A reversal of the judgment could not possibly have given them any less. They could not possibly have been prejudicially affected, because they had nothing by the judgment or decree and they could not have been given less by any future judgment that might have been rendered upon a retrial, even had the cause been reversed. They have no interests in the case which are adverse to, or in conflict with those of the appellant. They have no interest in sustaining the decree because the decree gives them nothing. They

would not lose anything even though the appellant should prevail on appeal. They were not interested in sustaining the judgment from which the appeal was taken. They are not adverse parties within the meaning of the statute, and consequently are not entitled to notice of appeal.

It is contended, however, that inasmuch as the evidence of Ryberg & Carleson was used to prove the claim of Nelson Bennett Company against the Twin Falls Land and Water Company, and as the claim of Nelson Bennett Company covered the work done by Ryberg & Carleson, and as Nelson Bennett Company recovered in the action, they thereby recovered also the amount claimed by Ryberg & Carleson and for that reason they were interested in the judgment. Ryberg & Carleson, however, are making no claim against Nelson Bennett Company. The court did not find that Nelson Bennett Company were indebted to Ryberg & Carleson in any sum. The contractual relations between Ryberg & Carleson and Nelson Bennett Company were not necessarily involved in this suit. In an action to recover by Nelson Bennett Company against the Twin Falls Company, Ryberg & Carleson were not necessary or proper parties except by reason of the fact that a lien was claimed upon the property of the Twin Falls Land and Water Company. Had Nelson Bennett Company sued Twin Falls Company upon the contract alone, without claiming any lien, Ryberg & Carleson would not have been necessary or proper parties. Inasmuch as they made no claim of lien in this action, and the court did not find they had any lien, and did not find that there was any sum due them from Nelson Bennett Company, and did not adjudge that any part of the money realized under the judgment be distributed to them, they had no interest whatever in the judgment, and it was immaterial to them what further proceedings were taken on the part of the judgment debtor. They could not secure in any future proceeding in said case any less right, or any less interest than was given them by the judgment entered in said cause from which the appeal was taken. They would be in no way prejudicially affected by a reversal of said judgment.

The motion, therefore, to dismiss the appeal will be overruled.

Ailshie, C. J., concurs.

Sullivan, J., dissents.

SULLIVAN, J., Dissenting.—I am unable to concur in the conclusion reached by my associates on the motion to dismiss the appeal in this case. At the outset, Mr. Justice Stewart who prepared the opinion of the majority, maintains under the provisions of section 4808, Revised Statutes, requiring notice of appeal to be served upon the adverse party or his attorney, that the term "adverse party" means only such parties as might be "prejudicially affected" by a modification or a reversal of the judgment appealed from, and such prejudice must affirmatively appear on the face of the transcript. I am unable to concur with that view of that question.

When a party has been brought into court and a judgment entered against him, he is entitled to a notice of all proceedings subsequent to the judgment, even though it be a proceeding to reverse such judgment. If his codefendant appeals and he does not join in the appeal, notice of appeal must be served on him, if his status in such action will be changed in any way or manner, whether prejudicially or otherwise, on such appeal. The presumption from his not joining his codefendant in the appeal is that he is satisfied with the judgment and does not desire to have it reversed. If his status or personal liability is to be changed in any manner, he has the right to notice and the right to be heard on such change. The "due process of law" clause of both the federal and state constitutions grants the right to the person to be affected by judicial proceedings to be present before the tribunal which pronounces or sets aside a judgment upon questions of life, liberty or property, and to have the right to resist the setting aside of a judgment against himself, if he so desires. It is not for the court to presume that the setting aside of a judgment is beneficial to a defendant, and that no notice thereof need be given him for that reason. Due process of law re-

quires that his life, liberty or property shall not be affected in judicial proceedings wherein he has appeared as a party, without giving him an opportunity to be heard. This court held in *Aulbach v. Dahler*, 4 Idaho, 522, 43 Pac. 192, that adverse parties upon whom notice of appeal must be served are such parties as a reversal of the judgment would affect. That means affect in any way. In *Titiman v. Alamance Min. Co.*, 9 Idaho, 240, 74 Pac. 529, this court held, under the provisions of said section 4808, that a notice of appeal must be served on each party to the suit whose interest would be affected by a modification or reversal of the judgment, or order appealed from, whether such party be plaintiff, defendant or intervener, and whether he appears or is in default—not prejudicially affected, but "affected." In support of that position, the court cited *Senter v. DeBernal*, 38 Cal. 637, that being the leading case in California under section 940 of the California Code of Civil Procedure, which section is identical with said section 4808. The California supreme court construed the term "adverse party" as follows: "Every party whose interests in·the subject matter of the appeal is adverse to or will be affected by the reversal or modification of the judgment or order from which the appeal has been taken, is, we think, an 'adverse party' within the meaning of these provisions of the code, irrespective of the question whether he appears upon the face of the record in the attitude of plaintiff or defendant or intervener."

The cases decided by the supreme court of Idaho construing the term "adverse party" are cited with approval in the Titiman case. Mr. Justice Stewart in support of his contention in this matter cites Hayne on New Trial and Appeal, section 210. I am unable to find anything in that section in which the author or the cases cited by him holds that the meaning of the term "adverse party" means only those parties whose interests would be prejudicially affected. The author there states: "Every party whose interest in the subject matter of the appeal is adverse to or will be affected by the reversal or modification of the judgment or order from which the appeal has been taken, is, we think, an

'adverse party' within the meaning of these provisions of the code, irrespective of the question whether he appears upon the face of the record in the attitude of plaintiff or defendant or intervener.''

My associates read into said section 4808 the word ''prejudicially.'' *Foley v. Bullard,* 97 Cal. 516, 32 Pac. 574, is cited by my associates in support of their contention on this point. The court there said: ''If a judgment of reversal leaves them in *statu quo,* then this appeal does not affect their rights and they are not entitled to notice.''

The converse of that proposition is also true, that if a reversal or modification of the judgment appealed from does not leave the party in *statu quo,* he is ''affected''; his status is changed.

1 Words and Phrases, page 224, is also cited. The author there states as follows: ''Every party whose interest in the subject matter of an appeal is adverse to and will be affected by a reversal or modification of the judgment or order from which the appeal has been taken, is an 'adverse party,' and entitled to notice of appeal, irrespective of the question whether such party appears on the face of the record in the attitude of plaintiff, defendant or intervener.''

The position I take is, that every party to an action is an adverse party to an appellant whose right would be affected in any way by a reversal or modification of the judgment, and I think the expression used by the court in the case of *Foley v. Bullard, supra,* is a very apt one; that is, if a modification or reversal of the judgment leaves the party in *statu quo,* then the appeal does not affect his rights and he is not entitled to notice; but if it affects his rights in any way so as not to leave him in *statu quo,* then he is an adverse party.

Mr. Justice Stewart also cites 2 Spelling on New Trial and Appellate Practice, 1143, where the author states as follows: ''The term 'adverse party,' in designating the appellant and respondent on appeal, cannot, without absurdity, be held to include one who would be benefited by a reversal or modification, but only those whose interests clearly are,

or may be, affected prejudicially.   This was illustrated and
lucidly explained in *The Victorian,* 24 Or. 121, 41 Am. St.
Rep. 838, 32 Pac. 1040.''

It appears from that decision that an action was brought
against the defendant boat, the ''Victorian,'' under the pro-
visions of certain lien laws, to enforce a lien for materials
alleged to have been furnished by the plaintiffs to the con-
tractor who constructed said boat.   It is disclosed by the
opinion in that case, that the sheriff of Multnomah county
seized the boat, whereupon the O. S. L. Railway Co. filed its
undertaking as provided by the statutes of Oregon, with one
Thompson and Troupe as sureties, and obtained its release,
and thereafter the O. S. L. Co. appeared in the action as such
defendant and claimant.   After trial, the court rendered a
judgment against the boat and also against the sureties upon
their undertaking.   From that judgment, the railway com-
pany appealed, but neither Thompson nor Troupe joined in
the appeal, and no notice of such appeal was served upon
them or either of them by the railway company.   Upon that
state of facts, the plaintiff moved to dismiss the appeal
upon the ground that Thompson and Troupe would be affected
by a modification or reversal of the judgment, and that they
were, as to the plaintiffs or defendants, an adverse party
within the meaning of the statute in relation to appeals, and
therefore necessary parties to give the appellate court juris-
diction to revise or reverse the judgment.   After stating
what the statute of Oregon requires in the service of notice
of appeal Chief Justice Lord, in the opinion said: ''Who,
then, is 'an adverse party' within the meaning of these pro-
visions of the code, upon whom the notice of appeal must be
served?   Evidently every party whose interest in relation to
the judgment or decree appealed from is in conflict with the
modification or reversal sought by the appeal.   Such has been
declared to be the meaning of the words 'adverse party' as
used in the statute of other states,''. and the learned chief
justice then cites a number of decisions from other states, and
among them, *Senter v. DeBernal,* 38 Cal. 640.   I am not in-
formed of what the record showed in that case and why the

learned chief justice arrived at the conclusion that the sureties against whom judgment had been rendered would not be prejudiced by a reversal or modification of the judgment.

I have several cases in mind where judgments were rendered against the principal and the sureties on bonds, and the sureties were very anxious that the judgment should be sustained because the principal was then in a condition to pay the judgment, and they desired him so to do, and for that reason did not want the judgment reversed, for in case of protracted litigation, the principal might become insolvent and they in the end would have the judgment to pay. Their interests were adverse to having the judgment modified or reversed, and would have been affected by a reversal of the judgment. So in the case of the Victorian; if the sureties were desirous of having the judgment entered in that case sustained, for the reason that the principal was then able to and could pay the judgment, but that in case a new trial was granted and another judgment obtained, the sureties might then have to pay the judgment themselves, they were interested in having the judgment sustained, and were adverse parties and were entitled to be heard on the appeal. But I suppose it appeared in that case that the principal in the bond sued on would be able to respond to any judgment that might be rendered on a retrial of the case. The point I make is that a judgment debtor may not desire to have a judgment reversed, and if he does not join in the appeal, notice of appeal must be served on him. I cannot understand in such cases why the appellant under said section 4808 is not required to serve his notice of appeal upon every codefendant who does not join with him in the appeal, and whose interests might in any way, prejudicially or otherwise, be affected by a modification of the judgment, as it is clear in many cases a reversal of a judgment against a party would not benefit him, but absolutely injure him. The decision in *The Victorian, supra,* takes the broad ground that a reversal of a judgment is always beneficial to a defendant, when as a matter of fact it is not.

Mr. Spelling seems to think that the term "adverse party," in designating the appellant and respondent on appeal, cannot, without absurdity, be held to include one who would be benefited by a reversal or modification of the judgment. But how does a court know that if a judgment be rendered against a principal and surety, and the principal appeals from the judgment, that the surety will not be prejudicially affected even by a reversal of the judgment against him? The statute intends that every party to an action who has any interests in the suit whatever that might be affected in any way by a reversal or modification of the judgment, should be served with a notice of appeal, so as to give him an opportunity to be heard.

Unless it clearly appears from the record that the party upon whom a notice of appeal has not been served cannot be affected in any manner by a modification or reversal of the judgment, he is an "adverse party," and may be affected, within the meaning of the provisions of said section 4808, as a party may be interested in having a judgment against him sustained, rather than taking the hazard of a new trial, on which a more unfavorable judgment might be obtained, or perhaps the inability of his codefendant to respond to a judgment entered on a new trial of the case.

It must be presumed that a party plaintiff or defendant who does not join with his coplaintiff or codefendant in an appeal is satisfied with the judgment and is opposed to a modification or reversal thereof. Why should a court come to the conclusion that a party against whom a judgment has been rendered and who refuses to join his codefendant in an appeal will be beneficially affected by a reversal of the judgment and a new trial and decline to give him his day in court? The very fact that such party refuses to join in an appeal indicates that he is satisfied with the result, and desires the judgment to stand, and should be served with notice of appeal, that he may appear and have opportunity to resist a reversal of the judgment, if he wishes to do so. Without such notice, he is deprived of his day in court, and without notice to him, the court holds that he will be benefited or not

prejudiced by a reversal of the judgment. It changes his liability without his consent and without jurisdiction of his person. It does not leave him in *statu quo;* therefore, it is very apparent to me that the notice of appeal must be served upon each and every party to the action who would in any manner be affected by a modification or reversal of the judgment. The holding that a defendant does not have to be served with notice when the appeal is taken to set aside the judgment against him, for the reason that a reversal of the judgment would benefit him, is absolutely wrong, for a reversal in many cases is absolutely prejudicial to the interests of the judgment debtor.

After a defendant's personal liability has been determined by a court of competent jurisdiction by service of process or his voluntary appearance, the court has no authority to change the judgment in any way so as to change the defendant's personal liability or status in any manner without notice to him. It is not sufficient for the court to say that as the judgment is reversed and a new trial granted, it is not prejudicial and may be done without notice, for in many cases that would not be true.

The construction of the term "adverse party," as used in said section 4808, is that every party to the action who would not be left in *statu quo* if everything asked for by the appellant on his appeal is granted, is an "adverse party," and must be served with notice of appeal. But in the case at bar, my associates hold that Ryberg & Carleson can in no possible view of the case be in any manner affected by a reversal of the judgment. They, in effect, hold that their status will not be affected or changed in any way even if all the appellant demands on this appeal is granted. So, in their view of the case, Ryberg & Carleson's status will not be affected, whatever the decision on the merits may be.

I will now proceed to discuss the main question on the motion to dismiss.

This action was brought to foreclose an original contractor's lien. Two of the subcontractors, of whom there were more than twenty, had filed subcontractor's liens, and one of them,

Alexander Toponce, had brought an action to foreclose his lien, making the Twin Falls Land and Water Company and the Nelson Bennett Company defendants. Thereafter this action was brought by the Nelson Bennett Company against the Twin Falls Company, Alexander Toponce, Ryberg & Carleson and Walter G. Filer and Martin B. DeLong, trustees, as defendants. The record fails to show whether Ryberg & Carleson had, at the time this suit was brought, commenced an action to foreclose their subcontractor's lien; but Nelson Bennett Company alleged in their complaint that the defendants, Ryberg & Carleson, were subcontractors under the Nelson Bennett Company and had performed labor and furnished materials in the building of certain portions of the canal in controversy, and further allege that they had filed their lien, claiming a balance due them of $5,856.33 for such work and materials, and that in order to protect the Nelson Bennett Company as principal contractor, said Ryberg & Carleson's claim should be litigated and determined in this action and the amount found due them should be satisfied out of the property covered by the plaintiff's lien; that plaintiff had paid to said Ryberg & Carleson all sums by it received from the Twin Falls Company and allowed for the work of Ryberg & Carleson under the contract between Ryberg & Carleson and the plaintiff. It is further alleged in the complaint of the Bennett company, as follows: "Plaintiff further alleges that this proceeding is of such a nature that the court should herein determine any and all controversies between the parties, which plaintiff alleges can be done without prejudice to the rights of anyone, and a complete determination of the controversy and rights of all parties cannot be had without the presence of the lien claimants, made parties hereto, and for that purpose and that equity may be done, and a multiplicity of suits avoided, and one decree only of foreclosure may be made, plaintiff has accordingly made said Toponce, said Ryberg & Carleson, and said Filer and DeLong, trustees aforesaid, parties defendant herein."

It is there alleged that a complete determination of the controversy and rights of all the parties cannot be had without the presence of Ryberg & Carleson and Toponce and Filer and DeLong. Summons was issued to all of the above-named defendants and was served on Ryberg & Carleson and the other defendants. Ryberg & Carleson thereafter made a written appearance and took thirty days in which to answer. They did not answer and at the beginning of the trial their default, for want of an answer, was entered. The other defendants answered. The answering defendants admitted that the defendants, Ryberg & Carleson, were subcontractors under the plaintiff in the performance of certain work on said canal, and also admitted that Ryberg & Carleson had filed a subcontractor's lien against said canal, and that they were claiming thereunder $5,856.33 from the defendants, and that as to the allegation that the Bennett company had paid to Ryberg & Carleson all sums of money received by them from the Twin Falls company for the work done by Ryberg & Carleson, the Twin Falls company avers that it has no knowledge or information sufficient to answer said allegation, and therefore denies the same.

After this action was brought, the action of Toponce to foreclose his lien was consolidated with this action and Toponce was made a defendant and he filed a cross-complaint herein, setting up his claim in the matter. The cause was tried by the court and findings of fact, conclusions of law and judgment was entered. The twenty-third finding of the court is as follows: "The court finds that the defendants, Ryberg & Carleson, subcontractors under said Nelson Bennett Company, failed to appear herein or to prosecute their lien and are in default."

There the court finds that Ryberg & Carleson were subcontractors under the Bennett company and that they failed to prosecute their lien. My position is that the record clearly shows that Ryberg & Carleson, although in default, are adverse parties to the appellant in this case, and that the notice of appeal should have been served on them. While their names are not mentioned in the decree or judgment, except

where it recites that the defendants Ryberg & Carleson are in default and failed to prosecute their lien, thus holding that they had a lien and the opportunity to litigate it in this suit, and finds they failed to do so, nevertheless the record shows that they may be affected by a reversal of this judgment. The record shows that Ryberg & Carleson constructed the Dry Creek dam, and as above stated, the court found that there were placed in said dam, 208,992 cubic yards of earth, but that as the Bennett company's mechanic's lien and complaint only claimed 184,551 cubic yards, that the court would allow them only for that amount, and thereby refused to allow the Bennett company for over 24,000 cubic yards that Ryberg & Carleson had placed in said dam, and by the default of the defendants, Ryberg & Carleson, and their failure to litigate in this action their claim as subcontractors, the Bennett company has failed to recover judgment for the full amount of earth placed in said dam by Ryberg & Carleson, and now if the Bennett company cannot plead this judgment in bar of an action by Ryberg & Carleson against it to recover for 208,992 cubic yards which the trial court found had been placed in said dam, Ryberg & Carleson will be permitted by their own default to recover from the Bennett company over $6,000 more for their work on the canal than the Bennett company recovered from the Twin Falls company. For that reason, this action is a bar against Ryberg & Carleson recovering. more from the Bennett company than it recovered from the Twin Falls company for the work done by Ryberg & Carleson. This action, under the facts plead and the default of Ryberg & Carleson, is a bar to a recovery by Ryberg & Carleson for any greater sum than the Bennett company recovered in this action for the work done by them.

Conceding that Ryberg & Carleson had an understanding with the Bennett company that they would accept whatever it recovered from the Twin Falls company, as it recovered for about 184,000 cubic yards of earth placed in said dam, if the case is reversed and sent back for a new trial, and the trial court should find that there were only 160,000 cubic yards placed in said dam, as averred by the Twin Falls company

in its answer, Ryberg & Carleson will be loser of more than $5,000. Any way you may put it, Ryberg & Carleson will be affected by a reversal of this judgment, and are adverse parties within the meaning of the provisions of section 4808, and should have been served with notice of appeal.

While it is true the contract of Ryberg & Carleson was as subcontractors under the Bennett company, and they were not named in the contract between the Twin Falls company and the Bennett company, still it was only right, proper and just that they were compelled under the law to appear in this action and establish the amount of work done by them for the protection of the Bennett company, as well as themselves, or be barred from in any manner foreclosing their lien. They were regularly brought in under the allegations of the complaint, appeared in the action, and only defaulted for want of an answer, and so far as any recovery by them for the work done under their subcontract, they ought to be bound as to the amount of work they can recover for by the findings of the court on that question. If not, the finding of the amount of work done by them on the Dry Creek dam may be changed upon a retrial of this case and their interests affected, and for that reason, they are adverse parties and ought to have been served with notice of appeal.

Mr. Justice Stewart states in his opinion, as follows: "The court did not enter any decree against them (R. & C.) in any way whatever; did not adjudge any rights in their favor or against them." Under the law, one who is made a party to an action, the complaint setting up certain rights claimed by him and is served with summons and appears in the action, and is only in default for want of an answer, is bound by the judgment or decree entered in such action, whether he be named in it or not, at least so far that such judgment or decree would be a bar to an action brought by him upon his cause of action stated or set forth in the complaint against the plaintiff in the action.

Supposing that each of the twenty-two subcontractors had been named as defendants in the complaint, and the allegations therein to the effect that each of such subcontractors

had filed mechanic's liens for certain amounts, naming them, and the complaint contained other allegations sufficient to show that all of said claims should be settled in one action, and each and every of such defendants after having made a written appearance should default for want of an answer, would it be right, under our law, to permit them thereafter to bring twenty-two suits to foreclose their liens? I say no; and the law does not contemplate or countenance such proceedings. They are, and ought to be, in a case of that kind, barred from each bringing an action. In justice to the original contractor and to the owner, they ought, as our law contemplates, be compelled to set forth their claims in such suit by the contractor or be forever barred from prosecuting such suits.

I maintain that there are sufficient allegations in the complaint to require Ryberg & Carleson, after having been served with summons, to appear and assert their claim and after they have appeared and taken time to answer, and thereafter were in default for want of an answer, they are bound by the judgment so far as their claim referred to in the complaint is concerned. On the face of this record, it is clearly shown that the rights of Ryberg & Carleson, as subcontractors, might have been, and ought to have been, litigated and determined in this action. Under the authorities, this judgment would be *res adjudicata* or estoppel against Ryberg & Carleson if plead by the Bennett company in an action by Ryberg & Carleson against it for the amount claimed by them on their mechanic's lien. (*Fahey v. Easterly Machine Co.*, 3 N. Dak. 220, 44 Am. St. Rep. 554, 55 N. W. 580.) In an exhaustive footnote to that case, under the head of "Of the Proof of *Res Judicata*," the learned author says: "In the first place, it is clear that the impossibility of determining from a mere inspection of a record whether or not an issue is decided is not conclusive of the question. The record cannot be contradicted by proving a determination of some question clearly not within the issues made by the pleadings. On the other hand, as to every matter which might legitimately have been litigated and decided under the plead-

ings, it is competent for the parties to offer and the court to receive extrinsic evidence, either oral or written, for the purpose of establishing the ground of the former decision, and thus giving it effect as *res judicata''*; and cites in support of that doctrine Freeman on Judgments, sections 272, 273, and many other authorities. The author then quotes from *Cummings v. McGehee,* 9 Port. 349; and cites Greenleaf on Evidence, section 522, and other authorities, as follows: "The rule is, that judgments are final and conclusive between the parties when rendered on a verdict on the merits, not only as to the facts actually litigated and decided, but that they are equally as conclusive upon all facts which were necessarily involved in the issue."

In the case at bar, it was very material to have some disposition made of the claim of Ryberg & Carleson, because it was represented by a prior lien of record. The portion of the finding which recites that they had failed to prosecute their lien becomes an adjudication on that point and can be relied on by the Twin Falls company to clear its record. It was said in Fahey case above cited, as follows: "As the defendant is not at liberty to withold his defenses and thus make them the subject of further controversy, a judgment in favor of the plaintiff is conclusive not only of the defenses actually interposed but also against all defenses which might have been interposed in the action and affirms the existence of all the facts plead by the plaintiff and essential to support the judgment rendered in his favor."

And again: "A judgment of the court possessing competent jurisdiction is final, not only in reference to the matters actually or formally litigated, but as to all other matters which the parties might have litigated and decided in the case."

In *Barker v. Cleveland,* 19 Mich. 230, it is said: "If the determination of a question is necessarily involved in the judgment, it is immaterial whether it is actually litigated or not."

In *Short v. Taylor,* 137 Mo. 517, 59 Am. St. Rep. 508, 38 S. W. 952, it is said: "The conclusiveness of a just judgment

is not confined to the matter litigated, but includes the findings of fact which were in issue and necessarily decided, though no specific findings may have been made thereon."

The decided weight of precedent and authority is that judgments of a court of general jurisdiction are final and conclusive, not only as to facts actually litigated and decided, but are equally as final and conclusive upon all facts which the parties might have litigated and had decided in the case. It was the duty of Ryberg & Carleson, under the allegations of the complaint and in service of summons, to set up their claim on their subcontract with Bennett company, and have it determined in this suit, as it is shown by the complaint and admitted by the answer of the Twin Falls company that they claim a lien as subcontractors under Bennett company, and, as I view it, a reversal of the judgment will affect them although they were in default for want of an answer, and no judgment, in terms, was entered in their favor or against them. They were not at liberty, under the pleadings, to withhold the litigation of the amount claimed to be due them on their lien as subcontractors, and make it the subject of further litigation, and the judgment in this suit, if properly plead, would be an estoppel against them in an action by them against Bennett company.

The theory of our statute is to prevent a multiplicity of suits growing out of the same transaction or connected with it. And especially is this so under the lien laws of our state, which provide for the consolidation of all actions to foreclose liens on the same property, and under its provisions all liens of contractors and subcontractors under them may, and ought to be, litigated and determined in the same action, and unless that is done, an original contractor or a subcontractor may be the loser if the rights of each are determined in separate actions. In the case at bar, the record shows that there were more than twenty subcontractors under Nelson Bennett Company. The record shows that two of those, at least, had filed liens against the Twin Falls company as subcontractors under the Bennett company. The Bennett company did all that it could by pleading in its complaint

and by service of summons upon Ryberg & Carleson, who had filed a lien as subcontractors, to bring them in and have determined in this action the amount of work done by them and the amount due them as such subcontractors. The record shows that Ryberg & Carleson constructed what is called the Dry Creek dam, and it also shows that they moved 208,-992 cubic yards of earth in the construction thereof, at twenty-seven cents per cubic yard, amounting to $56,427.84, but inasmuch as plaintiff's mechanic's lien and complaint only call for 184,551 cubic yards of embankment in that dam, the court holds that the Bennett company is only entitled to recover from the Twin Falls company for 184,551 cubic yards at twenty-seven cents per cubic yard, amounting to $49,828.77. It will be observed that the difference between 208,992 cubic yards and 184,551 cubic yards is 24,441 cubic yards, and the difference between $56,427.84 and $49,828.77 is $6,599.07. Now, the Bennett company will lose that amount provided Ryberg & Carleson are permitted now to bring suit against them for the full amount of earth placed in said dam, and would no doubt have established that amount if they had come in and answered and established the fact that they were entitled to recover for the full amount of earth placed in said dam, and as I view it, it was their duty, under the pleadings, to come in and establish the amount of their claim and not place the Bennett company in a position to lose several thousand dollars by their failure to answer. Ryberg & Carleson ought not to be permitted to "play fast and loose" in this way, as they had the right, and it was their duty, under the law, to appear in this action and establish their claim. To permit them under the pleadings and facts of the case to default and say to the Bennett company, "We won't prove up our claim in this action, but you go ahead and if you are not able to establish and get a judgment for the full number of cubic yards placed by us in the Dry Creek dam, we will bring an action against you and recover the full amount," would result in the grossest injustice, and permit them to profit by their own neglect and wrong. That is just the way the decision of the majority of

the court may result. The injustice of such a proposition is very apparent. The Bennett company has no doubt done all that it could to protect itself against the claim of Ryberg & Carleson. Ryberg & Carleson were invited in to prove their claim in this case. Summons was served on them and they were in default for want of an answer, and under those facts, it would be most unjust now to permit them to recover from the Bennett company over $6,000 more than the Bennett company recovered from the Twin Falls company on account of their claim. They have thrown the full responsibility on the Bennett company, and will no doubt take advantage of any error or mistake made by Bennett company, and under the decision of my associates, compel it to pay to them over $6,000 more than it recovered from the Twin Falls company. They are thus permitted to profit by their own default.

As clearly indicating the understanding of counsel for the appellant as to the relation in this action of the subcontractors, we have in the record the affidavit of E. B. Critchlow, the leading counsel for the appellant on the motion to retax costs, and in that affidavit, Mr. Critchlow states as follows: "Affiant states that during the course of said trial, it was announced by counsel for the plaintiffs herein that each and every of the subcontractors under Nelson Bennett Company, plaintiff herein, who had done work upon that portion of the Twin Falls Canal system, who appeared and testified at the trial, were claiming from the Twin Falls Land and Water Company, under Nelson Bennett Company, pay for services performed by them for which they had not been adequately compensated, and that each and every of said subcontractors appeared for the purpose of testifying to the amount of labor performed by him with a view and for the purpose of recovering in his own behalf; that Nelson Bennett Company was in reality suing as trustee for each and every of the said subcontractors, and that in the event of recovery the subcontractors would be allotted by the plaintiff corporation the amount due them for the work done by each respectively; that in accordance with this understanding and agreement,

each of the said subcontractors have voluntarily appeared, and that it was by agreement with Nelson Bennett Company that they should appear and make proof of their rights in the premises. It was further stated by the court and acquiesced in by the counsel for plaintiff that each and every of said parties, without further proof or testimony in the premises, would be taken and understood to be standing in the relation as parties to the case and treated accordingly."

In said affidavit the leading counsel states that upon several occasions during the trial it was announced by counsel for the plaintiffs that the subcontractors, among whom were Ryberg & Carleson, appeared as witnesses for the purpose of testifying to the amount of labor performed by them with a view and for the purpose of recovering in their own behalf; that Nelson Bennett Company was in reality suing as trustee for each and every of said subcontractors, and that it was stated by the court and acquiesced in by the counsel that each and every of said parties, without further proof or testimony in the premises, would be taken and understood to be standing in the relation as parties to the case and treated accordingly. If that affidavit be true, as we have no doubt it is, it clearly shows that it was the understanding of the court, counsel and the parties that those subcontractors who had been named as defendants in the complaint were to be treated as parties interested in the case and are interested in the judgment to the amount of what is due them. So far as their claim is concerned, this judgment, if plead in an action by them for the foreclosure of their lien on the canal against the Twin Falls company or against Nelson Bennett Company, would be *res adjudicata.* (2 Black on Judgments, secs. 623, 630 et seq.; 2 Spelling on New Trial and Appellate Practice, sec. 664 et seq.)

It is clear that Ryberg & Carleson are adverse parties so far as the Bennett company is concerned, according to the meaning placed on the word "adverse" by my associates. If they should now sue the Bennett company for the difference due them, according to the proof in this case, which they may do under the decision of my associates, the Bennett

company would have no right to plead this judgment in bar of such action. Under the provisions of our statute for combining suits of this kind and providing that all interested persons may be made parties thereto, there is no adjudication of the rights of Ryberg & Carleson in this case, according to the opinion of my associates. I maintain that the Bennett company had the right to have a determination in this suit of all the interests and claims of subcontractors under them who were made defendants, so as to preclude the contingency of their bringing a separate suit against it for work which the Bennett company itself might never get pay for from the Twin Falls company. This is clearly shown from the fact that the Bennett company did not get judgment for the full amount of the earth placed in the embankment of the Dry Creek dam by Ryberg & Carleson, and to hold that Ryberg & Carleson are not bound by this judgment will, in case they bring suit against the Bennett company, no doubt enable them to recover much more than the Bennett company recovered for them in this suit, in which they had ample opportunity to protect themselves and the Bennett company. It is not necessary that the interest of an adverse party be adverse to every other party to the action. It is only necessary that it be an adverse interest to one or more of the parties, whether they be plaintiffs with him, defendants with him, or otherwise. Ryberg & Carleson are adverse parties not only to the Bennett company, but also to the Twin Falls company, and ought to have been served with notice of appeal. The motion to dismiss should be sustained.