NIELSON v. SMITH et al. (WHEELWRIGHT, Intervener)
SMITH LAND CO. v. JOHNSON et al.

Nos. 6199, 6198.   Decided November 18, 1940.   (107 P. 2d 158.)

*J. D. Skeen* and *E. J. Skeen,* both of Salt Lake City, for appellants in both cases.

*LeRoy B. Young,* of Ogden, and *D. A. Skeen* and *A. U. Miner,* both of Salt Lake City, for respondents in No. 6199.

*D. A. Skeen, LeRoy B. Young, A. U. Miner,* and *Charles D. Moore,* all of Salt Lake City, for respondents in No. 6198.

WOLFE, Justice.

These consolidated cases involve (1) an action by Wilse A. Nielson, a judgment creditor of John W. Smith, to have declared void a transfer of Smith's interest in certain land to Smith Land Company, a corporation, and thus to enable said creditor Nielson to reach Smith's interest to satisfy his claims; and (2) an action against Nielson by the corporation, Smith Land Company, to secure specific performance of a contract to convey title to said land to it, as assignee of the buyer, upon tender of full payment under the contract. Albert S. Wheelwright, trustee in bankruptcy for John W. Smith has intervened in the first case and adopted the allegations of Nielson.

At the outset we are confronted by a motion made by respondent M. M. Johnson and Charles D. Moore to strike appellants' bill of exceptions and to dismiss the appeal in these cases because said bill was not served on these respondents and was not "settled, filed, or allowed within the time or in the manner provided by law."

The decree of the lower court was signed on April 3, 1939 and Notice of Judgment was given to appellants on April 12, 1939. On April 25 (within 30 days, Sec. 104-39-4, R. S. U. 1933) an order was entered by the trial judge granting plaintiff (appellants) up to and including ■ July 1, 1939 "to serve and file its Bill of Exceptions."
A series of extensions was granted by subsequent orders, each entered before the time granted in the last had expired, giving appellants until September 7 to settle and file the bill of exceptions. In the record also is a stipulation signed by representatives of all parties to these suits, agreeing that September 7 might be set as the extended date for filing the bill. Dated September 1, but marked filed on September 7, an order was granted by the judge of the lower court

allowing and settling the bill. It appears, therefore, that respondents' position as to the time of filing and settling the bill of exceptions is not well taken.

The record does not show that the proposed bill of exceptions was ever served on respondents Charles D. Moore or M. M. Johnson and for this reason Johnson and Moore have moved to strike the bill. It appears that in 1926 M. M. Johnson, acting as receiver for the Nielson-Burton Company, entered into a contract to sell the land in question in these suits to John W. Smith. Moore was his attorney. Later, Moore acquired title to the land, and was assigned the contract by the Woodscross State Bank which had acquired title and the contract from Johnson. Still later, but prior to the commencement of these suits, Wilse A. Nielson acquired title to the land and was assigned the contract by Moore. In bringing action for specific performance under the contract the Smith Land Company joined as defendants M. M. Johnson, Charles D. Moore, and Wilse A. Nielson. The Woodscross State Bank, Johnson, and Moore in the trial court moved to dismiss the action as to them. The motions were granted but, upon reconsideration, the motions of Johnson and Moore were denied. The trial court in its Findings of Fact, No. 3, stated: "Said contract [between Johnson and John W. Smith] and all rights thereunder and the said real property, represented thereby were by the seller and owner of said property duly assigned, transfered and conveyed to Wilse A. Nielson."

In *Langton Lime & Cement Co.* v. *Peery et al.,* 48 Utah 112, 159 P. 49; *Langton Lime & Cement Co.* v. *Smith et al.,* 48 Utah 112, 159 P. 49, we denied a motion to strike the bill of exceptions and to dismiss the appeal although the proposed bill was not served on certain parties to the suits. At page 50 of 159 P., we said:

"If a party would not be affected [by a modification or reversal of the judgment appealed from] he is not a necessary party, and hence to omit to serve him with notice of appeal or to serve him with a bill of exceptions is not fatal to the appeal, nor is it ground for striking the bill of exceptions."

It appears, therefore, that although Johnson and Moore are parties to this suit, they are not the real parties in interest and will not be affected by a modification or reversal of the decree below. They have sold and assigned all their rights in the contract and the land. On the authority of the Langton cases, supra, we hold that they are not necessary parties and that failure to serve the bill of exceptions on them is not fatal.

The record shows clearly that the proposed bill of exceptions was served timely on the attorneys for Wilse A. Nielson, the real party in interest. The bill, therefore, will not be stricken for failure to serve it on Johnson and Moore.

Respondents Nielson and Wheelwright urge that the bill of exceptions be stricken because it contains no order by the trial judge settling the bill. But, although a signed certificate was not physically attached to the bill of exceptions, included in the judgment roll file was an order of the trial judge identifying, certifying, and settling the bill. We do not consider this irregularity sufficiently grave to warrant striking the bill. We turn now to the merits of these cases.

In 1926 M. M. Johnson, as receiver of Nielson-Burton Company, entered into a written agreement with John W. Smith whereby Johnson agreed to sell and Smith agreed to buy certain real property in Box Elder County in consideration for $10,118.78 payable in installments.

In 1929 W. A. Nielson recovered a judgment against John W. Smith in the sum of $1,278.92. In 1930 W. A. Nielson recovered a judgment against John W. Smith for the sum of $54.90 and in the same year Bertha K. Skeen recovered judgment for $100 against John W. Smith. Said judgments have never been satisfied.

In 1930, but subsequent to the time when all three of the aforementioned judgments had been recovered, the Smith Land Company was organized by John W. Smith and members of his family. John W. Smith transferred his

interest in the real property in question to the Smith Land Company in return for stock. Other members of the family also received stock. At that time John W. Smith was living on the land. Living at his home and depending upon him for support were his divorced daughters and her two minor children. John W. Smith was in arrears in his payments at that time and in need of additional equipment to cultivate the farm. There is testimony that J. Cameron Smith transferred his tractor to the corporation and that other family members accepted stock in payment for debts owing to them from John W. Smith.

In 1931 the Smith Land Company failed to pay its State corporation tax and as a result its charter was forfeited. After the filing of the present action by Nielson its charter was reinstated.

In 1932 M. M. Johnson conveyed legal title to the land and assigned his contract of sale to Charles D. Moore. In 1936 W. A. Nielson acquired legal title from Moore as well as Moore's rights in the contract of sale. Nielson had also acquired the judgment of Bertha K. Skeen against John W. Smith.

W. A. Nielson then served notice of default under the contract on John W. Smith, Smith Land Company, and one Albert S. Wheelwright, trustee in bankruptcy for John W. Smith. Whereupon the Smith Land Company tendered the amount due under the contract and demanded a deed from Nielson.

In the meantime, in 1935, John W. Smith had filed a voluntary petition in bankruptcy, listing as his creditors W. A. Nielson and Bertha K. Skeen for the amounts of the judgments set out above. An adjudication in bankruptcy was made and Albert S. Wheelwright was elected as trustee. Wheelwright sold the rights of John W. Smith in said property to Aubrey F. Turley for $500.

But before Smith filed his petition in bankruptcy W. A. Nielson had entered suit in Box Elder County in the form of a creditor's bill, alleging the unsatisfied judgments

against John W. Smith and alleging that the corporation was organized and Smith's interest in the land transferred to it with intent to delay and defraud creditors and that the corporation, therefore, held that interest in trust for John W. Smith. Albert S. Wheelwright, as trustee in bankruptcy, intervened in the suit and adopted the allegations of Nielson's complaint.

Smith Land Company entered suit in Salt Lake County against M. M. Johnson and his successors, including W. A. Nielson, demanding specific performance of the contract of sale of said land.

The cases were consolidated for trial. The trial court found that John W. Smith caused the corporation to be organized to delay and defraud his creditors and that over and above a homestead exemption of $2,300 the transfer of the land to the corporation was void to the extent that his equitable interest in the property was necessary to satisfy judgments against John W. Smith and to pay the costs of Smith's bankruptcy proceedings. Wheelwright, as trustee in bankruptcy, was decreed to have prior liens against the land, subject to payment of the balance of the purchase price, in the amount of the judgments and the costs and expenses of the bankruptcy proceedings. It was further decreed that if said lines were not satisfied in 60 days, they were to be foreclosed and the land sold by the sheriff of Box Elder County.

In the Salt Lake County case the court decreed that W. A. Nielson should execute a deed to the land to John W. Smith and Smith Land Company upon their payment of the balance due on the purchase price, but that the property should be subject to the lien fixed and decreed in the Box Elder County case.

John W. Smith and Smith Land Company have appealed and have assigned numerous errors. It is asserted that the lower court was in error in finding that the equity and interest of John W. Smith in the land under the contract at the time of transfer to Smith Land Company, "was of a value far in excess of $2,300 over and above

the balance of the purchase price and all liens against said property," whereas the evidence shows that payments were in arrears and the contract was subject to forfeiture, and therefore of very little value. Smith's argument is that the interest which he transferred to the corporation was less in value that his homestead exemptions and that the transfer could not, therefore, have been to defraud his creditors, citing *Payson Exchange Savings Bank* v. *Tietjen,* 63 Utah 321, 225 P. 598. But proof that payments were in arrears and that the contract was subject to forfeiture indicates nothing as to Smith's equity in the property. He retained the right to pay the arrearages and to secure clear title. In the record is testimony as to rental and purchase value of land. Although appellants allege that a $2,000 payment was due and delinquent at the time of the transfer and that certain taxes were then unpaid, there is testimony which places the value of said land in excess of $14,000. From these facts the lower court reasonably could find that the interest which John W. Smith transferred to the Smith Land Company exceeded in value his $2,300 homestead exemption. The decree of the lower court preserves for Smith his homestead exemption. The corporation was found to be the alter ego of John W. Smith so payments by it after the transfer were in reality made by Smith and the additional interest thereby acquired accrued to Smith. We find no error.

Smith asserts that Nielson and the Trustee are estopped to question the legality and good title of the Smith Land Company because Nielson and his predecessors in interest recognized, dealt with, and accepted payments from the Smith Land Company. It appears that Charles D. Moore recognized the assignment by John W. Smith to the corporation. The record shows that after the alleged assignment Moore had many dealings with the Smith Land Company and looked to it for payment on the contract. But Moore's interest consisted simply of a right to be paid under the contract. He held legal title

merely to enforce this right. Moore cared not whether payments came from Smith personally or from the Land Company. So long as payments were forthcoming he was satisfied. It cannot be said, therefore, that acceptance of payments by Moore from the Land Company bound his successors to a recognition of the legality and regularity of organization of the corporation. The lower court has decreed that Nielson's interest in the land acquired through Moore will be extinguished upon payment of the balance of the purchase price and Nielson must convey by deed to the buyer. Surely Smith cannot complain of that part of the decree.

Nielson, however, has another claim against the land which did not come through Moore. Nielson is a creditor of Smith's and seeks to subject the land to payment of his judgment claims. But Smith went into bankruptcy so Nielson has filed his claims with the trustee in bankruptcy who has intervened in this suit. It must be remembered that Nielson is asserting two separate rights (1) to be paid under the contract of sale, and (2) to assert a lien on the assets of Smith. We find nothing in the record which estops Nielson by his conduct from asserting his claims.

As to Wheelwright—the intervener—we find no evidence that he ever had notice of the corporation or has in any way estopped himself from attacking Smith's transfer to the corporation. Wheelwright adopted the pleadings of Nielson and alleged that said transfer was made to defraud creditors. The Smith family organized said corporation to take over the contract and own the land. The only assets paid in besides Smith's interest in the land were a tractor and some debts of Smith's owing to members of his family. But Smith apparently felt that the corporation was of such little importance that he allowed its charter to be forfeited for failure to pay taxes. Not until this suit was filed was its charter reinstated. John W. Smith took out bankruptcy. He continued at all times to live on the farm and to carry on his activities

just as before the organization of the corporation. From the record we cannot say that the lower court came to a wrong conclusion in finding the corporation to be the alter ego of John W. Smith. Therefore, we must abide by its finding. *Stanley* v. *Stanley*, 97 Utah 520, 94 P. 2d 465; *Olivero* v. *Eleganti*, 61 Utah 475, 214 P. 313.

It is asserted that the suit in Box Elder County is barred by the Statute of Limitations. The assignment to the Smith Land Company was made on October 4, 1930. The Box Elder County suit was filed on July 9, 1935—over 4 years later. Sec. 104-2-24, R. S. U. 1933, provides that an action founded on fraud or mistake must be brought within 3 years, "but the cause of action in such case shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Appellants point out that execution against Smith was returned unsatisfied; that Nielson was thereby put on notice that Smith no longer claimed an interest in said land; that the return was dated December 3, 1930; but that not until 1935 was suit commenced. There is considerable conflict as to whether Nielson or his privies knew or should have known of the assignment of the contract to the corporation. But the exact method and time of notification are not alleged. Conditions on the farm remained the same, that is, John W. Smith and family continued to live on and to operate said farm. We are therefore unable to say at what time Nielson or his predecessor had, or should have had, notice and we cannot hold the action barred by the Statute of Limitations.

Appellants contend that the judgment awarding certain rights to Albert S. Wheelwright, trustee in bankruptcy, is void because the lower court in its findings set forth that all right, title, and interest of John W. Smith in said property has been conveyed to Aubrey F. Turley by trustee's deed executed by Wheelwright, and because Wheelwright has divested himself of any interest in said property. But that conveyance was made after

these actions were filed. Sec. 104-3-19, R. S. U. 1933, provides in part:

"An action or proceeding does not abate  *  *  *  by the transfer of any interest therein, if the cause of action  *  *  *  continues  *  *  *  In the case of any  *  *  *  transfer of interest, the action or proceeding may be continued in the name of the original party."

Smith cannot complain of, and is not affected by, any transfer made by the trustee who can dispose of only so much of Smith's estate as the court orders divested from Smith. The transaction between the trustee and Turley cannot effect or injure Smith.

The decree includes an amount for costs and expenses of Smith's bankruptcy proceedings. In his complaint in intervention it does not appear that the trustee prays for his costs and expenses in the bankruptcy suit, merely for "costs expended herein." It appears, therefore, that the lower court erred in awarding the trustee a lien upon the property in the amount of the costs and expenses of the bankruptcy proceeding. The trustee has not prayed for such relief. The costs and expenses of the bankruptcy proceedings should be fixed and awarded by the bankruptcy court under whose jurisdiction Smith has voluntarily placed himself and his property.

It should be noted that these cases involve no conflict of jurisdiction between the State District Courts and the Federal Bankruptcy Court, therefore, no discussion will be made of problems raised by a state court or a federal court first obtaining jurisdiction of certain assets and having the other court later entertain a suit and attempt to order disposition of said assets. In this case the two suits were first filed and pending in the State District Courts sitting as equity courts. Then Smith took involuntary bankruptcy. Later the trustee in bankruptcy, by direction of the bankruptcy court, filed a complaint in intervention adopting Nielson's pleadings and asking that the State District Court enter a decree as requested by Nielson.

The trustee did not attack the jurisdiction of the state court; he asked it to settle the issues raised in the Nielson's complaint. The state court resolved the issues presented to it.

We have considered the points raised in this appeal and have found them in respondent's favor, with the exception of the award of a lien in the amount of the costs and expenses in the bankruptcy proceeding. The decree of the lower court, modified so as to eliminate the award of the lien for bankruptcy costs, is affirmed. Costs to respondents.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.