## LANGTON LIME & CEMENT CO. v. PEERY et al.
## SAME v. SMITH et al.

Nos. 2806, 2807.   Decided June 29, 1916.   (159 Pac. 49.)

1. APPEAL AND ERROR—PROCEEDINGS FOR TRANSFER—NOTICE—PARTIES ENTITLED TO NOTICE. All parties who may be adversely affected by reversal or modification of the judgment must be made parties to the appeal, although they defaulted in the court below.[1] (Page 115.)

2. APPEAL AND ERROR—PARTIES—PERSONS NOT AFFECTED BY REVERSAL. A contractor who defaulted in a mechanic's lien case need not be joined in an appeal taken by the owner, since the reversal or modification of the judgment would not adversely affect him. (Page 115.)

3. EXCEPTIONS, BILL OF—SETTLEMENT—SERVICE—PARTIES TO BE SERVED. A defaulting contractor need not be served with the bill of exceptions in a mechanic's lien case since a reversal or modification of the judgment would not adversely affect him. (Page 115.)

4. MECHANIC'S LIENS—PROCEEDINGS TO PERFECT—TIME FOR FILING CLAIM—CONTINUING CONTRACT. Where an owner exercised his contract right to change contractors, a mechanic's lien notice is in time when filed over forty days after the first contractor quit, but within forty days after delivering material to the second contractor, for the contract is continuing. (Page 122.)

5. MECHANIC'S LIENS—PROCEEDINGS TO PERFECT—TIME FOR FILING CLAIM—STATUTE. A subcontractor is entitled to a mechanic's lien upon complying either with Comp. Laws 1907, Section 1388, by filing a claim for work, etc., to be thereafter performed, or with Section 1386 by filing a notice within forty days after the work, etc., is performed.[2] (Page 123.)

6. MECHANICS' LIENS—RIGHT TO LIEN—MATERIALMEN—STIPULATIONS IN PRINCIPAL CONTRACT AS TO LIEN. A contract provision that the contractor should keep the building free from liens, etc., does not affect a materialman's right to a lien upon complying with Mechanic's Lien Law (Comp. Laws 1907, Sections 1372-1376, 1378, 1386, 1388). (Page 124.)

[1] *Allen* v. *Garnet*, 45 Utah 39, 143 Pac. 228.

[2] *Morrison* v. *Cary-Lombard Co.*, 9 Utah 70, 33 Pac. 238; *Lumber Co.* v. *Partridge*, 10 Utah 322, 37 Pac. 572.

7. MECHANICS' LIENS — ENFORCEMENT — FINDINGS — SUFFICIENCY—
NONPAYMENT. A finding that a mechanic's lien claimant had
not been paid, sufficiently meets a contention that the claim-
ant had been paid by work done for it by the contractor. (Page
125.)

8. APPEAL AND ERROR—REVIEW—PRESUMPTIONS—FINDINGS—EVI-
DENCE CONSIDERED. Where there is ample, competent, and mate-
rial evidence in a mechanic's lien case, it will be presumed
that the court considered only proper evidence in making its
findings. (Page 125.)

9. MECHANIC'S LIENS—OPERATION—AMOUNT OF LIEN—LIMITATION
TO AMOUNT PAYABLE UNDER CONTRACT. Under Mechanic's Lien
Law (Comp. Laws 1907, Section 1373), providing that the lien
shall extend to the entire contract price, or the amount re-
maining due thereunder when the claimant commences work,
a subcontractor's lien cannot be enforced beyond those amounts.
(Page 126.)

10. MECHANICS' LIENS — ENFORCEMENT — EVIDENCE — SUFFICIENCY—
AMOUNT OF DEFENDANT'S INDEBTEDNESS. Evidence *held* to sus-
tain a finding that a mechanic's lien claim could be satisfied
without exhausting the sum specified in the contract between
the owner and the principal contractor. (Page 126.)

11. MECHANICS' LIENS—INTEREST SUBJECT TO—WIFE'S INTEREST. Un-
der Comp. Laws 1907, Section 2826, a wife's interest in her
husband's property other than homestead is subject to a me-
chanic's lien claim. (Page 127.)

Appeal from District Court, Third District; *Hon. F. C.
Loofbourow*, Judge.

Two actions to foreclose mechanic's liens were commenced
by the Langton Lime & Cement Company, one against Joseph
S. Peery and his wife, and the other against Elias Wesley
Smith, in both of which the Walker Stone Company became
a party defendant and asserted mechanic's lien claims against
the property.

From judgment sustaining the Walker Stone Company's
lien, the owners appeal.

AFFIRMED.

*Snyder & Snyder* for appellants.

*James Ingebretsen* for respondent.

Langton L. & C. Co. v. Peery et al. Same v. Smith et al., 48 Utah 111.

APPELLANT'S POINTS.

Where there is a valid contract between the owner and contractor, such contract is the measure of the owner's liability. (*Kellogg* v. *Howes,* 81 Cal. 175, 22 Pac. 511, 6 L. R. A. 588; *Stevenson Mill Co.* v. *Braun,* 136 Cal. 122, 68 Pac. 481, 57 L. R. A. 726; *McDonald* v. *Hays,* 132 Cal. 490, 64 Pac. 850; *Hampton* v. *Christensen,* 148 Cal. 729, 84 Pac. 200.) The owner who has performed his part is only liable to the extent of the contract price, and when he properly pays out the whole contract price, he is not liable to the sub-contractors. (*Kelly* v. *Alling,* 80 Atl. 782, 84 Conn. 487; *Butler* v. *Ny Chung* (Cal.), 117 Pac. 512; *Dennison* v. *Burrell,* 119 Cal. 180, 51 Pac. 1.) Where the principal contractor abandons and the owner is called upon to finish under the contract he can only be required to pay sub-contractors whatever may be in his hands due principal contractor after expenses of so completing work. (*Slade* v. *Amarillo Lbr. Co.* (Tex.), 93 S. W. 475; *Riter* v. *Oil Co.* (Tex.), 48 S. W. 758; *Hunnicutt Co.* v. *Van Hoose* (Ga.), 36 S. E. 668; *Schmohl* v. *O'Brien,* 55 N. Y. S. 629; *Simonton* v. *Lumber Co.,* 108 Ill. App. 481; *Miller* v. *Lumber Co.,* 111 Ill. App. 651; Phil. Mech. L., 62 i, 137; *A. Page & Sons Co.* v. *Grant,* 127 Ia. 246, 103 N. W. 489; *Delaney Lumber Co.* v. *Keohane* (Mich.), 92 N. W. 124; *White* v. *Livingston,* 57 N. Y. S. 466.) A complaint cannot state a cause of action which does not show first, a filing of the preliminary notice, or otherwise giving the owner actual notice, and second, which does not state that there was money due the contractor when the final notice of claim was filed. (13 Enc. P. & P. 984, 6, *et seq.*; 27 Cyc. 382; Phil. Mech. Liens 61; Bois. Mech. L., Sec. 544, 548, 551; *Turner* v. *Stenzel,* 70 Cal. 28; 11 Pac. 389; *Samson* v. *Buffalo, etc., Co.,* 20 N. Y. Super. Ct. 280; *Lemieux* v. *English,* 43 N. Y. Sup. 1066; *Dennison* v. *Burrell* (Cal.), 51 Pac. 1.)

FRICK, J.

The Langton Lime & Cement Company, a corporation, commenced two actions to foreclose mechanics' liens. The first action was commenced against one O. M. Engdahl, contractor, and said Peery as owner of a certain building and the real

estate upon which the same is situated, and against a number of other lien claimants whom it is not necessary to enumerate here; and the second one was commenced against said Engdahl as contractor and said Smith as the owner of a certain other building and the real estate on which the same is situated, and against other lien claimants whom it is not necessary to enumerate. The Walker Stone Company, hereinafter called company, was made a defendant in both actions as a lien claimant and it set up its liens and asked that the same be established against both properties and foreclosed. Engdahl, the contractor, made default in both actions. Either some time before or at the trial of the cases all the other lien claimants were settled with or their claims were taken care of, except the first mortgage lien, and that was not in question in the lower court nor is it in question here. The only real parties to the first action, therefore, were Peery (who is appellant here) as the owner of one of the buildings and the real estate on which it is situated, and said company (which is respondent in this court); and to the second action said Smith as appellant and said company as respondent. The cases were tried together below and were heard as one case by this court, and we shall dispose of them on that basis.

The court entered a default judgment against Engdahl and declared the mortgage a first lien on both premises, and also declared the company's liens as second liens on both said properties, and, in case of default in payment of the company's liens, ordered said properties sold subject to said mortgage. Both Mr. Peery and Mr. Smith appeal.

The first question requiring consideration is presented by counsel for said company. In settling the bill of exceptions and in taking the appeal neither said Peery nor said Smith served the bill of exceptions or the notice upon **1, 2, 3** any of the defendants or parties other than said company. Counsel therefore contends that, under the rulings of this court in *Allen* v. *Garner*, 45 Utah 39, 143 Pac. 228, and preceding cases, the appeal should be dismissed, or, at least, the bill of exceptions should be stricken, for the reason that neither said Engdahl nor any of the other defendants were served with notice of appeal. This court, by an unbroken line

of decisions, has held that all the parties to an action who may be adversely affected by a modification or reversal of the judgment are adverse parties under our statute and must be made parties to the appeal either as appellants or respondents. We have, however, further held that such is the case even though a party makes default in the court below. *Allen v. Garner, supra.* It will be observed, however, that the test whether a party below is a necessary party to an appeal, as laid down in that case, as in all other cases emanating from this court, is that the omitted party must be affected by a modification or reversal of the judgment appealed from. If a party would not be affected he is not a necessary party, and hence to omit to serve him with notice of appeal or to serve him with a bill of exceptions is not fatal to the appeal, nor is it ground for striking the bill of exceptions. In this case, both under the contract entered into by Mr. Engdahl and under our statute, Engdahl's status or liability is not in the least affected, regardless of what conclusion we shall reach respecting the judgment appealed from. This precise question has been before the Supreme Court of California several times in recent years, and that court has squarely held that a contractor, in the position of Engdahl, is not affected by the modification or reversal on appeal of a judgment foreclosing a mechanic's lien against the property of the owner, although a personal judgment was also entered against the contractor. *Mannix* v. *Tyron,* 152 Cal. 31, 91 Pac. 983; *Quist* v. *Sandman,* 154 Cal. 748, 99 Pac. 204, and cases cited in those two cases. Although there are some provisions in the California statute somewhat different from ours, yet the decisions and the reasoning of the California Supreme Court apply to our statute. The Supreme Court of Idaho has arrived at the same conclusion in the case of *Nelson Bennett Co.* v. *Twin Falls, etc., Co.,* 13 Idaho 767, 92 Pac. 980, 13 Ann. Cas. 172. We do not deem it necessary to quote from those cases nor to cite other cases. The reasoning in all of them is not only sound but convincing. In view, therefore, that all of the other lien claimants were out of the case at the time of judgment, and that the only defendant who in fact remained in the case apart from the two appellants cannot be affected by whatever

judgment we may enter or direct, it was not necessary to serve notice of appeal upon any of the others; neither was it necessary to serve the proposed bill of exceptions upon any of them, or their attorneys.

Counsel for appellants, however, insists that our former decision, wherein we held that the requirement to serve notice upon an adverse party applies to one who made default in the court below, should be overruled. We think otherwise. A party in making default certainly concedes no more than that judgment as prayed for may be entered against him. By making default he indicates that he is satisfied with such a judgment. In case, therefore, the judgment is appealed to another court in which his liability may be materially affected or changed, and where additional costs may be adjudged against him, we think it is but fair and just that in case he can be served with notice of the appeal he should be. A party does not become an outlaw simply because he makes default in a court of original jurisdiction. While there are cases which are contrary to our holding in *Allen* v. *Garner, supra,* we can see no reason for changing the ruling there made that in case a party may be adversely affected by a modification or reversal of the judgment on appeal he should be served with notice when that can be done. To serve such a notice when the party's residence is known, and when he does not conceal himself, can work no hardship upon any one. Upon the other hand, it affords every party to an action an opportunity to advise this court why the judgment should be sustained. Every one is thus given his day in the court to which an appeal is taken and in which the rights of all parties may be finally determined. Of course, where service of notice cannot be made and the appellant would be deprived of his constitutional right of prosecuting an appeal, and when timely application is made to this court setting forth the facts, some way will no doubt be found to allow the appeal and to dispose of it.

For the reasons stated, therefore, the motion to dismiss the appeal and the motion to strike the bill of exceptions must be denied.

Proceeding now to the merits. Appellants' counsel has grouped his numerous assignments of error as follows: (1)

That "the findings are contrary to the evidence and insufficient to support the judgment"; (2) that the court erred in its "construction of the lien law as a whole"; (3) that "respondent has no lien because not filed in time and because waived, and because it elected to and did take pay in another manner"; (4) "that findings are not upon all the issues"; (5) "errors in the admission and rejection of evidence"; and (6) "Mrs. Peery's objections." It will be more convenient for us to consider the foregoing propositions in a different order from that in which counsel has stated them. We shall proceed to a consideration of the second proposition, namely, that the court erred in construing our mechanics' lien law, and especially as the same applies to sub-contractors.

In order to present the questions involved intelligently we shall be required to state somewhat at length the different sections of the mechanic's lien law. The different sections of the law are found in Comp. Laws 1907, and those which are material here are as follows:

Section 1372 reads as follows:

"Mechanics, materialmen, contractors, sub-contractors, builders, and all persons of every class performing labor upon or furnishing materials to be used in the construction * * * of any building * * * shall have a lien upon the property upon which they have * * * furnished materials, for the value of such * * * materials furnished, * * * whether at the instance of the owner or of any other person acting by his authority or under him as agent, contractor, or otherwise."

Section 1373 reads as follows:

"In case of a contract between an owner and a contractor, the lien shall extend to the entire contract price, and such contract shall operate as a lien in favor of all persons except the contractor to the extent of the whole of the contract price: * * * Provided, that if at the time of the commencement to do work or furnish materials, the owner has paid upon the contract, and in accordance with the terms thereof, any portion of the contract price, the liens hereby created shall extend only to the unpaid balance of such contract price and

of which such laborers and materialmen shall have had notice.''

Section 1374 reads:

''No payment made prior to the time when the same is due, under the terms and conditions of the contract, shall be valid for the purpose of defeating, diminishing, or discharging any lien in favor of any person except the contractor; but as to such liens payment shall be deemed as if not made, and shall be applicable to such liens, notwithstanding that the contractor to whom it was paid may thereafter abandon his contract or be or become indebted to the owner, in any amount for damages or otherwise, for non-performance of his contract or otherwise.''

Section 1375, so far as material, provides:

''As to all liens except that of the contractor, the whole contract price shall be payable in money * * * and shall not be diminished by any prior or subsequent indebtedness, offset, or counterclaim in favor of the owner and against the contractor.''

Sections 1376 and 1378 are as follows:

''No alteration of any contract shall affect any lien acquired under the provisions of this chapter.''

''When any person entitled to a lien under the provisions of this chapter, other than the original contractor, shall have actually commenced to perform labor upon or to furnish materials for any building, improvement, or structure herein mentioned, the property shall be charged with the liens in this chapter provided, and no payment made to the original contractor shall in anywise defeat or impair the claims for such lines.''

Section 1386 reads:

''Every original contractor, within sixty days after the completion of his contract, and every person save the original contractor claiming the benefit of this chapter, must, within forty days after furnishing the last material or performing the last labor for any building, improvement, or structure, or for any alteration, addition to, or repair thereof, or performance of any labor in or furnishing any materials for any mining claim, file for record with the county recorder of the

county in which the property or some part thereof is situated, a claim in writing containing a notice of intention to hold and claim a lien, and a statement of his demand, after deducting all just credits and offsets, with the name of the owner, if known, and also the name of the person by whom he was employed, or to whom he furnished the material, with a statement of the terms, time given, and conditions of his contract, specifying the time when the first and last labor was performed, or the first and last materials furnished, and also a description of the property to be charged with the lien, sufficient for identification, which claim must be verified by the oath of himself or some other person."

Section 1388 reads as follows:

"Any subcontractor before commencing to furnish materials or to perform work, or at any time thereafter and before the completion of his contract, may file a statement of claim with the recorder as hereinbefore provided, containing a notice of intention to hold and claim a lien, a description of the property to be charged, and the probable value of the work to be done, or the probable value of the materials to be furnished, as near as may be. From the time such statement shall have been filed, he shall have a lien for the work thereafter done, or materials furnished by him, not exceeding the sum stated as the probable value thereof: and in the event of such sub-contractor claiming to have done work or furnished materials before the filing of such statement, he may include therein a statement of the value of the work already done or material furnished, as near as may be, for which, to the extent of the sums mentioned, his lien shall likewise attach."

The first thing that divides the parties is the construction that should be placed on Section 1388, which is the last section set forth above. In order to fully understand the position of appellants' counsel it now becomes necessary to refer to a few of the material facts.

On the 11th day of April, 1910, the appellants entered into a general contract with the defendant, O. M. Engdahl, to construct two apartment houses, one for the appellant Smith and the other for the appellant Peery. The contract price to

be paid to Engdahl to complete the two buildings was $22,-280 for each building, or $44,560 for both. The whole amount paid upon said contract will hereafter be given in this opinion. On June 15, 1910, respondent entered into a contract with Engdahl, the contractor, to furnish the cut stone for the two buildings for the sum of $2,084.30, one-half of that sum to be applied to each one of the buildings. Respondent made the first delivery of stone on July 23, 1910, and the last on December 6, 1910, but performed some work on the building connected with the stone work as late as the 23d day of December, 1910. Respondent's notice of intention to claim a lien, and the claim of lien itself, were filed on the 11th day of January, 1911, as provided by our statute. Some time in the preceding October Engdahl abandoned his contract with appellants and they, on November 4th following, entered into a contract with one Thomas Homer to complete Engdahl's contract, agreeing to pay said Homer the sum of $16,500 to complete both buildings. When the respondent commenced to deliver the stone perhaps not more than $10,000 or $12,000 had been paid on Engdahl's contract. The evidence on that point is not very clear, but in view that the amount paid was much less than one-half of the contract price the exact amount is not controlling or even material for the purposes of this decision. The respondent, within the time required by Section 1386, *supra*, and in accordance with its provisions, filed separate claims and notices of intention to claim a lien against each one of the buildings, and the ground upon which they stand, for the amount remaining unpaid upon its contract with Engdahl. After Engdahl had abandoned his contract respondent continued to furnish stone under the contract with him and the same was all accepted and it is conceded was all used in the buildings and is a part thereof. Respondent, however, did not proceed under the provisions of Section 1388, *supra*, by filing the statement in that section provided for. Counsel for appellants contended in the court below, and insists in this court: (1) That in view that respondent did not file the statement mentioned in Section 1388 it acquired no valid lien against the buildings, or either of them; (2) that inasmuch as it did not file its claim and notice

122     SUPREME COURT OF UTAH.     [June

Langton L. & C. Co. v. Peery et al. Same v. Smith et al., 48 Utah 111.

of intention to claim a lien within forty days from the time
it furnished the last item under the Engdahl contract—that
is, within forty days from the time Engdahl abandoned the
contract—it, for that reason, failed to acquire a lien on either
of the buildings; and (3) that inasmuch as it was provided in
the contract entered into between Engdahl and appellants
that the former should keep the buildings free from liens,
and in view that all subcontractors were bound by the provi-
sions of that contract, neither of them could acquire a lien
against the buildings but were required to look to Engdahl
for their pay. In view that the trial court did not agree with
counsel's contentions he insists that the court has failed to
correctly construe and apply the mechanic's lien law of this
state.

The real situation must be kept in mind. In Article V
of the Engdahl contract it was expressly provided that in the
event that he should "fail in any respect to prosecute
the work with promptness and diligence" or should     4
fail in other respects, the owners had the right to pro-
ceed to complete the contract and to deduct the cost of doing
so from the contract price, and if it developed that the un-
paid portion of the contract price was insufficient they might
recover damages against Engdahl for such difference. The
contract also provided that the owners, for the purpose of
completing the contract, should take possession "of all mate-
rials, tools and appliances" on the premises "and to employ
any other person or persons to finish the work and to provide
the materials therefor." The contract with Homer, in express
terms, specified that it was entered into under the foregoing
provisions of Engdahl's contract and to complete the same.
Now, for the purpose of considering the contract with Eng-
dahl and the one with Homer as one contract, so far as the
contract price and the payments for the buildings were con-
cerned, counsel for appellants, at the trial, stated his position
as follows:

"Our position is, that the money paid to Homer was paid
on the Engdahl account under the terms of Article V of the
contract."

That is, he contended it was paid pursuant to the article

of the contract, a portion of which we have just quoted. We think counsel's position is the correct one, but, if it is, then it must also follow that the material that was furnished by any subcontractor for, and which was used in, the building under any contract entered into by any subcontractor with Engdahl must be deemed as furnished to complete the original contract entered into between Engdahl and the appellants. In other words, under the circumstances of this case it is wholly immaterial, for the purpose of acquiring a right to a lien, whether the materials were furnished under the contract with Engdahl or under the contract entered into with Homer. The owners of the buildings were bound under either in so far as the right to a lien was concerned, provided the subcontractor complied with the statutory provisions in filing his claim for a lien in other respects. The question thus narrows itself down to the proposition of whether the respondent has, by what it did in the way of filing and recording its claim and notice of intention to claim a lien, acquired a lien under our statute.

That the claim was filed within the forty days required in section 1386, in view of what we have said, there can be no doubt. Nor can the contention prevail that the respondent has failed to obtain a lien because it did not file the statement mentioned in section 1388. That section, in substantially the same form that it is now, was adopted in 1890. Laws Utah 1890, p. 26, Sec. 12. That section was considered and passed on twice by the territorial Supreme Court. The first time it was before that court was in 1893 in the case of *Morrison* v. *Cary-Lombard Co.*, 9 Utah, 70, 33 Pac. 238. In that case the question now raised by counsel was carefully and extensively considered and the court arrived at the conclusion that while a subcontractor may, if he chooses, follow the provisions of section 1388, yet, in order to acquire a lien, it is sufficient if he complies with the provisions of section 1386. The same result was reached in the case of *Lumber Co.* v. *Partridge*, 10 Utah 322, 37 Pac. 572, where the preceding case was approved and followed. The results reached in those cases have been followed in this jurisdiction ever since. Section 1388 in its present form has been in force

ever since 1898. R. S. 1898, Sec. 1388. Even though we were inclined to arrive at a different conclusion from that reached by the territorial Supreme Court, yet, in view that there is no substantial difference between the present phraseology of section 1388 and when it was passed on by the territorial Supreme Court, and in view that the law as declared in the two cases referred to has been enforced and followed for more than twenty years, we should be very slow to disturb the rule there laid down; and we do not feel inclined to do so.

The third proposition raised by counsel that because it was provided in the contract that Engdahl should keep the buildings free from liens for that reason those who furnished him labor or material were prevented from acquiring liens, to our minds, is in the very teeth of the statute. We have set forth the different sections for the purpose of permitting the reader to judge for himself, and to prevent us from repeating in the opinion what their effect should be. If counsel's last contention were adopted our lien statute could, in effect, be repealed by the owner and the principal contractor so far as the subcontractor's rights are concerned. The provisions of the statute are, however, so clear upon the proposition that the rights of the subcontractors cannot be affected by the owner and the principal contractor that no comment upon that phase of the statute is necessary. If the subcontractor follows the provisions of the statute enacted for his benefit he acquires a lien, regardless of the acts of the contractor or the owner of the building. It follows, therefore, that respondent filed its claim and notice of intention to claim a lien within proper time and that it acquired a lien against both buildings and the ground upon which they stand, although it did not file the statement mentioned in section 1388 and notwithstanding the provisions of Engdahl's contract.

Neither can the contention prevail that the respondent waived its right to a lien, nor that it received payment for the material furnished by it "in another form." While it is true that counsel produced some evidence to the effect that respondent's manager had taken up the question

of pay for the stone with Mr. Engdahl by having the        7
latter build a dwelling house for the manager, yet the
great preponderance of the evidence is against counsel's
contention that any arrangement for payment except in the
usual manner was entered into between Engdahl and the man-
ager.   Indeed, the evidence against counsel's contention is
all but conclusive.  In that connection complaint is also made
by counsel that the court failed to find whether counsel's con-
tention was correct or whether the manager's version of the
transaction was true.  While the court made no specific finding
upon that question, it, however, did find that respondent
had not been paid for the stone as contended for by appel-
lant's counsel.  The court's finding is therefore responsive to
appellants' pleas of payment and is against those pleas.  In
view of the circumstances of this case the failure to make
a specific finding upon the question suggested by counsel can-
not affect the result.  In view that this is an equity case
we could make or direct a finding if one were necessary.  As
we read the record, and we have read the whole evidence as it
is preserved in the bill of exceptions, but one finding is rea-
sonably permissible under the evidence upon that question,
and that is that the respondent neither agreed to receive, nor
did receive, payment for the stone by it furnished for the
buildings or either of them from any source, except in the
regular way.

There is no merit to the contention that the court com-
mitted error "in the admission and rejection of evidence."
This is an equity case and the court, not only once but on
frequent occasions during the trial, announced to counsel
that he would admit the evidence proffered and would
hear counsel with regard to its relevancy and material-        8
ity later and would ultimately pass upon the compe-
tency, materiality, and relevancy of those parts of the evi-
dence which were objected to by both sides.  In view, there-
fore, that there is ample, competent, material and relevant
evidence in the record to support the findings we must as-
sume that the court considered proper evidence only.  Nor
did the court reject any material evidence offered by appel-
lants.

Under the proposition that "the findings are contrary to the evidence and insufficient to support the judgment" various arguments are presented. One argument, as we understand counsel, is, that money in excess of the 9, 10 contract price of Engdahl's contract had been paid by the owners of the buildings to the subcontractors for the erection of the same. Under the provisions of section 1373, *supra,* subcontractors are entitled to claim a lien for the full amount specified in the contract between the owner of the building and the contractor. They, therefore, cannot enforce liens for any sum in excess of that amount, and if any part of the contract price has been paid in accordance with the provisions of the contract, if those provisions are not repugnant to our statute, before a subcontractor furnished material, his lien is limited to the amount remaining unpaid on the contract. The amount agreed to be paid the contractor, if the statute is complied with, is therefore the source and limit of the subcontractor's rights to claim a lien against the owners of the buildings. As we have seen, Engdahl agreed to erect the two buildings, excepting the heating plant and the plumbing, for $44,560. According to the evidence there had been charged against the Engdahl contract the sum of $29,693.90. In addition to that sum Mr. Homer was paid $16,500 to complete the two buildings. The whole amount of $46,193.90, which was charged against the Engdahl contract, was, however, not legally chargeable against it since some of the money was paid out for other purposes and hence must be deducted therefrom. There are at least two items, one for $1,225 for plumbing and heating, and the other for $1,000 paid to the architect, that cannot legally be charged against the Engdahl contract to the prejudice of respondent as a subcontractor. These two items alone amount to $2,225, which, when deducted from the $46,193.90, leaves a total apparently paid on the contract of $43,969.90, or $591.90 less than the contract price. But in addition to the foregoing there were other numerous items that were improper charges against the Engdahl contract which will reduce the amount legitimately chargeable against the contract so that there was enough remaining unpaid on the contract to satisfy respondent's claim in full.

There is, therefore, ample evidence to justify the court's finding that the amount agreed to be paid on Engdahl's contract was not exhausted, and that the respondent was entitled to a lien for the full amount claimed. Indeed, the great weight of the evidence is to that effect. The court, therefore, did not err in making the finding complained of.

Finally, it is contended that no lien could be obtained against Mrs. Peery's interest in the property without her consent, and that she did not consent. There is no evidence either way in the record upon that question. The contention is, however, not sound. The very statute which is relied on, to wit, Comp. Laws 1907, Sec. 2826, which gives the wife an inchoate interest in her husband's property which he owned or acquired during marriage makes her right in all property except the homestead subject to claims "secured by mechanics' or laborers' liens for work or labor done or material furnished exclusively for the improvement of the same." A different question would arise if the premises constituted Mr. Peery's homestead. The case would then be controlled by the decision of this court in the case of *Lumber Co.* v. *Vance,* 32 Utah 74, 88 Pac. 896, 125 Am. St. Rep. 828. In view of the character of the property involved, therefore, there is nothing in counsel's contention.

For the reasons stated the judgment should be, and it accordingly is, affirmed, with costs.

STRAUP, C. J., concurs in the result.

McCARTY, J., concurs.