542 P.2d 1165

**Glen B. MARTINEAU, Plaintiff-Respondent,**

v.

**Hubert WALKER, Defendant-Appellant.**

**No. 11801.**

Supreme Court of Idaho.

Nov. 25, 1975.

———◆———

Jay D. Sudweeks, May, May, Sudweeks & Fuller, Twin Falls, for defendant-appellant.

Lloyd J. Walker, Walker & Kennedy, Twin Falls, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a judgment in favor of plaintiff arising from a sale of cattle, and damages sought for breach of the implied warranties of their fitness and merchantability resulting in death of some of those cattle subsequent to sale. The major contention here is that the evidence is insufficient to sustain the judgment in that no cause of death was established which was attributable to the seller-defendant-appellant. We affirm the judgment of the trial court.

In September 1969 an agent of the plaintiff-respondent Glen B. Martineau, contacted defendant-appellant Hubert Walker and arranged to purchase from Walker 129 calves of mixed breeds. It was intended by Martineau that those calves would be raised to the point where they could be resold as feeder cattle. On September 18, the purchase was effected and the calves were trucked from the property of Walker near Jerome to the veterinary establishment of Dr. Rudd near American Falls. At the time of the purchase, the calves appeared to be in good shape and healthy. At Rudd's place the calves were held for approximately three hours while being branded, dehorned, castrated and innoculated for various diseases, except for one calf which appeared sickly and therefore was not treated. They were then transported by truck to a nearby ranch. The sickly calf died that night or the next morning and within the next few days other calves died. On October 1st, after the death of 10–12 calves, Rudd was summoned for assistance. Rudd performed an autopsy on two of the dead calves and diagnosed the cause of death as leptospirosis or leptospira. Thereafter, he vaccinated the entire herd for that disease. Despite that vaccination, calves continued to die. A second autopsy was performed by Rudd on additional dead calves about October 12th and the finding thereof was again that death was due to leptospirotic infection. Prior to the end of December a total of 22 calves died, most within the first 30 days following delivery.

The uncontroverted testimony at trial established leptospira to be a bacteria-like organism which normally infects livestock through the mucus membranes. The organism lives in moist areas and may be transmitted through canals, waterways, contact with wild animals or other livestock or from association with any environment which allows the fluid excreted from the diseased animal to remain moist. From the time the bacteria enters a host body there is an incubation period of approximately seven days prior to the manifestation of symptoms of disease. Following infection and incubation, a diseased animal becomes sick and may die immediately, may linger and die within 30–40 days or may recover entirely. The symptoms of a leptospirotic infection are often similar to "shipping fever," a condition in livestock which commonly arises from stress associated with transportation.

Most of the testimony submitted by plaintiff at trial was uncontradicted, but appellant basically argues the alleged inadequacy of plaintiff-respondent's case below. That argument is posed in three alternatives: First, that most of the evidence shows the existence of several equally probable sources of the infection, only one of which can be attributed to Walker; second, that the finding of the trial court involves inferences based on inference; and that plaintiff-respondent failed to establish his case to a "reasonable medical probability."

This action for damages was based upon alleged breach of the implied warranty of fitness for a particular purpose, I.C. § 28–2–315. The trial court found such breach and also concluded that there was a breach of warranty of merchantability. I.C. § 28–2–314(2)(c). Appellant does not assign error to finding the existence of warranties or the conclusion that warranties are appropriate in the circumstances of this case. Therefore, the decision of the trial court in those areas is conclusive.

The burden upon a plaintiff in a suit of this nature is to show the existence of the particular warranties, breach arising

from unsuitability at the time of delivery and loss proximately caused by such breach. *Chisholm v. J. R. Simplot Co.,* 94 Idaho 628, 495 P.2d 1113 (1972); *Henderson v. Cominco American, Inc.,* 95 Idaho 690, 518 P. 2d 873 (1973); See also, *Fox v. R. D. McKay Motors Co.,* 188 Kan. 756, 366 P.2d 297 (1961). At trial it was thus incumbent upon plaintiff to establish by a preponderance of the evidence that: (1) the calves were warranted as healthy and fit for a particular use; (2) that breach arose in that the calves were diseased before they left Walker's control; and (3) that this disease caused the resulting deaths.

The principal controversy at trial, reiterated here, was whether the infection said to have caused the death of the calves arose prior to their sale and delivery or after the risk of loss had passed to the buyer. Appellant argues that there was no direct evidence as to where the calves became infected; that the veterinarian, Dr. Rudd, testified that the organism could have entered the bodies of the calves at the seller's ranch, during shipment, at the veterinary establishment, at the buyer's ranch or even before the seller obtained the calves. Appellant asserts that it could not be stated "with scientific accuracy" that the infection of the calves took place at the seller's ranch and that Rudd's testimony was in disagreement with recognized authorities in the field regarding the incubation period for leptospirosis. Appellant also asserts that autopsies were conducted on only four of the dead calves and no autopsies were conducted on animals dying after October 12th. Based on the above, appellant submits that it is just as probable that infection occurred after the calves left the seller's ranch as it is that the infection took place at the seller's ranch.

Appellant argues that *Dent v. Hardware Casualty Co.,* 86 Idaho 427, 388 P.2d 89 (1963) and others compel a reversal, since it is there held that a plaintiff may not recover where his evidence fails to isolate a causal factor attributable to the defendant, but only shows the existence of several equally probable causes. We do not agree that the facts of this case fall within the factual framework of cases such as *Dent.*

While Rudd did admit the existence of several possible sources for infection other than the seller's ranch, he also stated, "Okay, now, I would like to qualify this. I don't believe the organism could have come from any of these other sources." Thereafter, he systematically eliminated all other sources except the seller's ranch as the probable source for leptospirotic infection.

The fact that Rudd could not scientifically identify the seller's ranch as the source of the infection is not dispositive. The inference which may be drawn from his testimony is that infection had to occur prior to the shipment of the calves from the seller's ranch. Such is sufficient to support the conclusion that the animals were diseased prior to the risk of loss passing to the buyer. That conclusion results in part upon the acceptance of the seven-day incubation period, but this was entirely proper. Appellant asserts that Rudd's opinions on the period of incubation were controverted by references to medical writings. No proper foundation was laid for introduction of those medical texts and indeed they were not offered in evidence. Whereas here, texts are only used in the cross-examination of a witness, they are not in evidence. Rudd flatly stated his disagreement with those writings and it was within the prerogative of the trier of fact to accept or reject his opinion.

Rudd testified that there was "no doubt whatsoever" that leptospirosis caused death in the animals upon which he performed the autopsy. It was not necessary that each animal be the subject of an autopsy before the trial court could reach a conclusion that all of the animals died as a result of leptospirosis. It was logical to conclude that all deaths resulted from the same disease and, considering the direct evidence on the possible sources of the disease, that the calves were infected before the sale or at the very least that some of the calves were infected with the disease prior to the

sale and transmitted that disease to the remainder of the animals.

 Appellant contends that such reasoning involves inferences drawn from circumstantial evidence which in turn forms the basis for further inference. We do not agree. It is true that the findings of the trial court rely upon the reasoning process of drawing conclusions from established facts. To that extent, it may be said that the findings rely on inference. It is not necessarily error for a trier of fact to arrive at its conclusions by this process or from the application of inference. It is only where the findings of fact or conclusions involve dependent, inferential intendments, absent an established evidentiary basis, that error occurs. In *Dent,* for example, the court held that the mere fact that an automobile accident had occurred did not justify the conclusion that the accident was the proximate cause of a cerebral hemorrhage. There, it was held equally probable that the cerebral hemorrhage had occurred before and in fact had precipitated the accident. No evidence was presented in *Dent* from which either conclusion could logically be drawn.

In contrast, here the reasoning of the trial court is well-founded upon direct, uncontroverted evidence of the period of incubation of the disease and that the disease was the cause of death. Such inferences as may be drawn from that direct evidence are not dependent upon one another as is true in the case of *Dent* and like cases. Although it is contended by appellant that it was equally probable that the death of the calves could have resulted from "shipping fever," we do not agree. While shipping fever may be confused with leptospirosis, the direct evidence indicates that all of the calves, save one, were vaccinated for shipping fever at the veterinary establishment. Although many calves died shortly after their delivery to the buyer's ranch, they continued to die long after the trauma of shipment would have dissipated. Examination of dead calves on two separate occasions two weeks apart demonstrat-

ed beyond any doubt that death was caused by leptospirotic infection.

 Finally, the appellant urges this Court to adopt a rule that an expert medical witness must testify to a "reasonable medical probability" on the question of causation. We have been cited no case in this jurisdiction applying such rule and we do not think it applies to the instant action. The issue of causation here is not necessarily a medical question. We therefore hold that plaintiff-respondent carried his burden of proof in the instant case, as above set forth, and that it follows that the findings, conclusions and judgment are supported by the evidence and will not be disturbed on appeal.

Affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, DONALDSON and BAKES, JJ., concur.