George Kevin YOST, a Minor, by and through his Guardian Ad Litem, Charlene Yost, and Charlene Yost, individually, Plaintiffs and Respondents,

v.

STATE of Utah, Steve Hammon, Carlo Sacco, dba Sacco's Produce; Quick Stop, Inc., a Utah corporation; and Chris L. Petersen, dba Chris's, Defendants and Appellants.

No. 16990.

Supreme Court of Utah.

Oct. 30, 1981.

David L. Wilkinson, Joseph P. McCarthy, Salt Lake City, Pete N. Vlahos, Ogden, for defendants and appellants.

Richard Richards, Ogden, for plaintiffs and respondents.

HALL, Chief Justice:

Defendant Chris L. Petersen (hereinafter "Petersen") appeals the judgment of the district court, sitting without a jury, which found him liable for injuries sustained in an automobile accident based on his negligence in selling alcoholic beverages to a minor.

The believable facts giving rise to the instant dispute are as follows. At about noon on August 31, 1976, defendant Hammon drove his pickup truck to Clearfield High School where he encountered two friends who were students there—plaintiff Yost and one Ronald Sills. On said date, all three individuals were minors: Hammon (age 18), Yost (age 16) and Sills (age 15). Yost and Sills decided to cut school and to go with Hammon to Ogden Canyon.

After leaving the high school, they stopped at defendant Sacco's business establishment where Hammon purchased two six-packs of beer. The three opened the beer and began to consume it while enroute to the Clearfield State Liquor Store. On their arrival at the liquor store, Hammon went in and purchased five "fifths" of wine. Thereafter, they stopped at an Arctic Circle where they procured ice and cups. They then proceeded north toward Ogden, stopping enroute at defendant Quick Stop's drive-in window where Hammon purchased two more six-packs of beer. Some of the liquor was stored on ice in a box in the back of the truck although all three continued to drink while proceeding toward Powder Mountain Resort in Ogden Canyon via the North Ogden Divide. As the truck was moving, Yost made several trips in and out of the side window of the truck to procure more liquor from the box in the back of the truck. By the time they had reached the area known as Snow Basin, they had consumed all 5 bottles of wine and all 24 cans of beer.

They then proceeded on toward Powder Mountain, stopping enroute at Petersen's business establishment for gas and more beer. While Yost filled the truck's tank with gasoline, Hammon and Sills went into the store. They were waited on by a woman who sold Sills a bag of potato chips and Hammon two or three six-packs of beer. The court found that the boys were obviously intoxicated at the time of this purchase.

The three then proceeded some 12 miles to Powder Mountain Resort as they drank more beer. The truck was seen at the resort skidding around in the parking lot, with one boy (Yost) standing in the bed of the truck dressed only in his underwear. As they left the resort area, Hammon apparently blacked out and the truck rolled down an embankment. As the truck rolled,

Yost was thrown clear of the truck[1] and suffered a severe spinal injury which left him permanently paralyzed. The complaint was filed on August 30, 1977.

Prior to trial, defendants filed motions for summary judgment seeking, *inter alia*, a determination that there can be no cause of action against one who furnishes liquor in favor of those injured by the intoxication of the person so furnished.[2] The trial court properly refused to adopt by judicial fiat remedies commonly available under so-called "civil damage" or "dram-shop" acts.[3] Nevertheless, the court denied the motions for summary judgment on the basis that the unlawful sale of liquor to a minor may be considered in apportioning negligence.[4] Such ruling is consistent with the common law,[5] as well as with the recent pronouncement of this Court in *Rees v. Albertsons*.[6] In *Rees*, we reversed the summary judgment entered by a lower court and held that a minor is entitled to have a determination as to both the misconduct of the seller from whom he purchased beer and the foreseeability that such sale would result in an injury of the same general nature as that which occurred.

After hearing the evidence adduced at trial, the trial judge determined that the negligence which caused Yost's injuries was to be apportioned as follows:

| | |
|---|---|
| Hammon | 80% |
| Petersen | 10% |
| State | 5% |
| Yost | 5% |

Only Petersen appeals.[7]

On appeal, Petersen first contends that Yost's complaint did not state a cause of action against him, inasmuch as he is not the owner or operator of the premises known as Chris's.[8] In his answer, Petersen alleged that "he is not the proper party in interest." There is a serious question as to whether such allegation has preserved the issue now asserted on appeal because of the ambiguity of the allegation. By claiming that he was not "*the* proper party in interest," he could reasonably have meant that it was Hammon, and not Petersen, who caused the accident. Indeed, at trial after Yost had rested, Petersen moved for what he termed "summary judgment" alleging that the accident was proximately caused by Hammon's driving and not by Petersen's sale of beer. There was never a motion to dismiss made on the ground asserted on appeal; hence, Petersen should not be heard to claim for the first time on appeal that he is not the owner or operator of Chris's.[9]

Notwithstanding the foregoing procedural flaw in Petersen's first contention,

---

1. Yost claims to have been in the cab of the truck at the time of the accident, having again crawled from the back through the side window.

2. The reason usually given for this general rule at common law is that the drinking of the liquor, and not the furnishing of it, is the proximate cause of the injury. See 45 Am.Jur.2d, Intoxicating Liquors, § 553 and cases cited therein.

3. By legislative enactment, several states have seen fit to provide for a right of action against the person who furnishes the liquor which caused the intoxication. Indeed, the State of Utah has since enacted such a statute; see U.C.A., 1953, 32–11–1, *et seq.*, effective May, 1981.

4. U.C.A., 1953, 32–7–15. A comparable situation would be the unlawful sale of liquor to a drunken person. U.C.A., 1953, 32–7–14.

5. See 45 Am.Jur.2d, Intoxicating Liquors, § 555.

6. Utah, 587 P.2d 130 (1978).

7. There is no basis for this Court to address the points raised by the State and by Yost (other than in response to Petersen's claims) inasmuch as no cross-appeals were filed pursuant to Rule 74(b), U.R.C.P.

8. Petersen claims that during the course of the trial Yost offered no evidence whatsoever as to the ownership of the premises. In support of his contention on appeal that he was not the owner or operator of Chris's, Petersen attaches to his brief an affidavit of his wife, Carol Petersen. Inasmuch as the affidavit was not presented to, nor considered by, the court below, we do not consider it here.

9. See, e.g., *Collier v. Frericks*, Utah, 626 P.2d 476 (1981).

nevertheless the record and transcript before us contain sufficient evidence to establish that Petersen was the owner or operator of Chris's. Prior to trial, Petersen filed a motion for summary judgment and an affidavit in support thereof. The affidavit was signed by one Bob Brown, who stated that he was "employed by the named Defendant [Petersen] on August 31, 1976, at the place of business in Huntsville, Utah, known as Chris's" and that he worked on the day of the alleged sale. Contrary to the conclusion reached by the dissent, under the facts peculiar to this case, the Brown affidavit is properly to be viewed as part of the record upon which the decision was based. This is to be seen in that the affidavit in question was presented to the same judge that subsequently tried the case, sitting without a jury. Had the case been heard by a jury, it would, of course, have been necessary to place the affidavit in evidence in order to apprise the jury thereof. Furthermore, Carol Petersen testified at trial that she worked at "our family business" known as Chris's, and that she was working on the afternoon of August 31, 1976. Such evidence is collectively sufficient to establish that Petersen is a "proper party in interest."

Petersen next challenges the court's apportionment of negligence among the parties. Specifically, he contends that his negligence was assessed too high and that it was also error not to assess the negligence of Quick Stop and Sacco as parties. We deem these contentions to be ill-founded.

■ Although Quick Stop was served with summons and a copy of the complaint, no responsive pleading was filed, no appearance was otherwise entered, and no one, including Petersen considered Quick Stop as a party, either at trial or on appeal.[10] Rule 14, U.R.C.P., permits a defendant to bring into the lawsuit another person "who is or may be liable to him for all or part of the plaintiffs' claim against him." Also, Rule 13, U.R.C.P., provides that a pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant. In the instant case, Petersen did not see fit to pursue either procedure.

■ Prior to trial, summary judgment was entered dismissing Sacco as a party. Although Petersen now attempts to challenge the propriety of that judgment, no appeal therefrom was ever perfected. Even assuming, *arguendo*, that the summary judgment is part of this appeal, nevertheless, we are without jurisdiction to rule upon the matter.

Rule 73, Utah Rules of Civil Procedure provides, in pertinent part that "[a] party may appeal from a judgment by filing with the district court a notice of appeal, together with sufficient copies thereof for mailing to the Supreme Court and all other parties to the judgment."[11] The rule further provides that "[n]otification of the filing of the notice of appeal should be given by the appellant serving a copy thereof on all the parties to the judgment.[12] Without such notice having been given, this Court is without jurisdiction to hear the matter.[13] In *Gill v. Tracy*,[14] the Court held as follows:

> The rule, which is well established in this state, is that it is incumbent upon appellants in order to confer jurisdiction on this court to serve the notice of appeal on all parties to the action not joining as appellants who may be adversely affected

---

10. As to Quick Stop's status as a party on appeal, see analysis of Rule 73, *infra*.

11. Rule 73(a), U.R.C.P.

12. Rule 73(b), U.R.C.P.

13. *Griffin v. Southern Pac. Co.*, 31 Utah 296, 87 P. 1091 (1906); *Anderson v. Halthusen Mercantile Co.*, 30 Utah 31, 83 P. 560 (1906).

14. 80 Utah 127, 13 P.2d 329 (1932).

by either a modification or a reversal of the judgment.[15]

The notice of appeal and all other pertinent appeal documents were served only upon Yost and the State. Sacco was therefore not made a party to this appeal, has not otherwise entered an appearance, and his interests have not been represented. Consequently, this Court is without jurisdiction to consider the propriety of the summary judgment.

■ In any event, the liability of the various tort-feasors being joint and several,[16] the percentage of negligence attributable to each of them does not affect Petersen's liability because his negligence was found to be greater than that of Yost.[17] Regardless of the percentage of liability attributable to Petersen relative to the other defendants, he is liable for Yost's total damage, reduced by: 1) the percentage of negligence attributed to Yost,[18] and 2) the greater of the amount of the consideration paid by Hammon for his release, or the amount, if any, by which the release provides that the total claim shall be reduced.[19]

■ The issue of contribution among joint tort-feasors [20] not having been litigated below, it was not incumbent upon the trial court to compare the relevant faulty conduct of those tort-feasors not joined, treated or considered as parties at trial.

■ Clearly, the apportionment of negligence among the remaining parties (Hammon, Petersen, State, and Yost) is a factual matter best left to the trial court's determination. The record adequately supports the trial court's apportionment of negligence. It was undisputed that all three of the boys drank liquor on a regular basis and had done so for years. They had all had training in automobile safety and understood the

dangers of drinking and driving. It was also undisputed that none of the persons who sold the beer and wine to Hammon asked him for identification. Sills and Yost testified that on the day of the accident Hammon had a beard and that he looked to be over 21 years; nevertheless, based on its own observations, the court specifically found that on the date in question Hammon would have appeared even younger than his actual age of 18. The court attributed greater fault to Petersen than the State for several specified reasons. The sale by Petersen was not only to a minor, but to an obviously intoxicated minor who logically might be expected to drink as he drove down a canyon road.

The findings and judgment of the lower court are hereby affirmed. No costs awarded.

HOWE and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.

STEWART, Justice (dissenting).

I dissent because I cannot agree with the conclusion that the record and transcript contain "sufficient evidence to establish that appellant was the owner or operator of Chris's," nor can I agree to going outside the trial record, as the majority does, in an effort to shore up the only, and, in my view, inadequate, evidence relating to the ownership of the business called Chris's. In short, I think the record is inadequate to support a judgment against Chris L. Petersen.

It is axiomatic that a plaintiff cannot meet its burden of proof by speculation. *Alvarado v. Tucker*, 2 Utah 2d 16, 268 P.2d 986 (1954). *Myrick v. National Saving & Trust Co.*, 268 A.2d 526 (D.C.App.1970).

---

**15.** *Id.*, 80 Utah at 130, 13 P.2d 329; see also, *Wasatch Livestock Loan Co. v. Jones*, 79 Utah 352, 10 P.2d 1070 (1932); *Langton Lime & Cement Co. v. Peery*, 48 Utah 112, 159 P. 49 (1916).

**16.** That joint tort-feasors remain severally liable to the injured person for the whole injury as at common law, see U.C.A., 1953, 78–27–40(2).

**17.** U.C.A., 1953, 78–27–37.

**18.** *Id.*

**19.** U.C.A., 1953, 78–27–42.

**20.** Provided for by U.C.A., 1953, 78–27–39 through 43.

There must be sufficient evidence to justify a reasonable inference of the truth of the matter charged. *Martineau v. Walker*, 97 Idaho 246, 542 P.2d 1165 (1972); *In re Interest of R.D.S.*, Colo., 514 P.2d 772 (1973); *Kopfinger v. Grand Central Public Market*, 60 Cal.2d 852, 37 Cal.Rptr. 65, 389 P.2d 529 (1964).

There is no testimony that Chris Petersen made the sale to Hammon, the driver accompanying plaintiff Yost on the night of the accident. Under the majority opinion, Petersen's liability is wholly vicarious; it is based solely on the proposition that he was an owner of the business. The only evidence in the record that Chris Petersen is an owner of the business was Carol Petersen's statement that she worked at "our family business."

The statement that Carol Petersen worked at the "family business" does not prove that Chris Petersen was an owner. At best, the statement created the possibility that one or more members of the family owned the business. The mere possibility, however, that any member of the Petersen family may be an owner did not prove that Chris Petersen is an owner of the business. The statement is so susceptible of a variety of meanings that reasonable persons could hardly conclude by a preponderance of evidence that Chris Petersen was the owner of the business in question. Certainly that is a possibility, but a possibility is not sufficient. "A choice of probabilities ... creates only a base for conjecture, on which a verdict ... cannot stand." *Alvarado v. Tucker*, 2 Utah 2d 16, 19, 268 P.2d 986, 988 (1954).

In tacit recognition of that frailty, the majority reaches outside the trial record for other evidence to support its conclusion. Reliance is placed on an affidavit, filed in support of a motion for summary judgment, and not introduced into evidence at the trial, in which the affiant, Bob Brown, stated that he was "employed by the named defendant [Chris Petersen] on August 31, 1976, at the place of business in Huntsville, Utah, known as Chris's." Notwithstanding the reliance on this affidavit, the majority refuses to consider an affidavit of Carol Petersen's because it was not presented to, nor considered by, the court below. That affidavit includes a copy of Chris' liquor license, and it is solely in Carol Petersen's name. In any event, the Brown affidavit makes no significant difference in my view.

In truth, neither affidavit should be considered. In a case that has been tried, it is improper for this Court on appeal to rely on, or even consider, a document which is in the file but not introduced into evidence. "The mere fact that a document is in the file does not permit this court to consider it as being before this court." *Adamson v. Brockbank*, 112 Utah 52, 78, 185 P.2d 264, 277 (1947). It is inappropriate for appellate courts to rely on documents not admitted in evidence. *Davis v. Long*, Mo.App., 521 S.W.2d 7 (1975). We are limited to considering only the trial record and what may be conceded by an adverse party. *Harding v. Brown*, 144 Ind.App. 528, 247 N.E.2d 536 (1969); *State v. Galeener*, Mo., 402 S.W.2d 336 (1966); *Pretti v. Herre*, Mo., 403 S.W.2d 568 (1966); *Kliege v. Iowa Employment Security Commission*, Iowa, 206 N.W.2d 123 (1973). Nor may a trier of fact, whether judge or jury, consider evidence not properly introduced. *Simpson v. Woodham*, Fla. App., 332 So.2d 693 (1976). More important, there is no indication that the trial judge in this case did in fact consider the Brown affidavit.

Plaintiffs' attempt to justify the judgment against Chris Petersen by asserting that Petersen had the burden of proving he was not a proper party, misses the mark. The argument rests on the fact that Petersen erroneously characterized his defense as an affirmative defense. The emphasis on the form of a denial of an allegation is unwarranted in determining which party has the burden of proof. It is the substance of a claim rather than the appellation given it which determines its character. *Wells v. Wells*, 2 Utah 2d 241, 272 P.2d 167 (1954). The effect of a denial is to place the burden on plaintiff to prove the matters denied. *Waite Lumber Co. v. Masid Bros., Inc.*, 189 Neb. 10, 200 N.W.2d 119 (1972); *Schmidt v. Sadri*, Nev., 601 P.2d 713 (1979). See also

*General Ins. Co. of America v. Carnicero Dynasty Corp.*, Utah, 545 P.2d 502 (1976); *Roberts v. Mitchell Bros. Truck Lines*, 289 Or. 119, 611 P.2d 297 (1980). When an answer raises no new matter, and only places in issue one or more elements of a prima facie case, the defendant, as a general proposition, has no burden of proof.

The inaccurate characterization of a denial as an "affirmative defense" does not shift the burden of proof to defendant.[1] See 1A Moore, *Federal Practice and Procedure*, § .314(3). As stated in *Schmitz v. Matthews*, 133 Wash. 335, 336, 233 P. 660, 660–661 (1925):

> The burden of proof is not upon the defendant to prove any allegation of his affirmative defense, when the affirmative defense, as here, adds nothing to the general denial and raises no affirmative issues .... It is true the issues were confused by appellant having interposed what he saw fit to denominate an affirmative defense, whereas it was nothing more than a general denial. But this is not an invitation to the trial court to commit error; it is merely an opportunity.

By denying that he was a proper party, Petersen placed in issue that aspect of plaintiff's prima facie case, and the burden

was on the plaintiffs to show that Petersen was the owner of Chris's. In my view, plaintiffs failed to do so.

Plaintiffs betray the weakness of their case by arguing that their "purpose was to sue the entity, Chris's," and since Chris Petersen was the "father and head of that family, [he] was properly made a party defendant." Although a husband once had dominion and control over his wife's "rights" and responsibility for her "wrongs," that day is long gone, and it would indeed be startling to fasten vicarious liability on a man because of the business activities of members of his family for the reason that he was the "head of that family."

To condone what appears to be vicarious liability on the facts of this case is, I think, an abandonment of long-standing principles governing burden of proof and appellate review.

I would reverse.

---

[1] Usually the burden shifts when the defense is an affirmative defense. An affirmative defense is one which commonly is called a confession and avoidance. It in effect admits, for the purpose of asserting the defense, the allegations of the complaint and seeks to avoid the legal effect of them on the basis of an affirmative justification or excuse. The defense raised by Petersen in this case is hardly an avoidance.

The mere denial of plaintiff's allegations in this case simply raises the issue as to Petersen's liability, a matter which plaintiff necessarily had to prove. That issue could have been raised by nothing more than a simple denial of liability. Asserting the defense under the misnomer of "affirmative defense" is nothing more than harmless surplusage.