716 P.2d 1373

**Grant LEE, Plaintiff-Respondent,**

v.

**Jack R. PETERSON, Sassy Office Systems, Inc., Defendant-Appellant.**

No. 15886.

Court of Appeals of Idaho.

April 1, 1986.

---

Michael J. Doolittle, Boise, for defendant-appellant.

Grant Lee, Boise, pro se.

BURNETT, Judge.

This case presents questions regarding express and implied warranties under the Uniform Commercial Code. An office products dealer has appealed a judgment for the buyer of a copy machine, holding that the machine was defective and allowing the buyer to rescind the transaction. For reasons explained below, we affirm.

The material facts are not disputed. Grant Lee purchased a used copier from Sassy Office Systems of Boise.[1] The purchase price of $1,796.62 was paid by a transfer of "credits" in a "barter club" of which both the buyer and seller were members.[2] The purchase agreement was reduced to writing. It included a handwritten notation that the copier carried a "30-day warranty [on] parts and labor." The back of the agreement contained printed language stating that all equipment was "of merchantable quality" and that the terms of any express warranty were detailed in a separate acceptance form. The acceptance form, presented to the buyer upon delivery, limited the 30-day express warranty to replacement of parts worn and broken during normal use. It specifically excluded "photoconductor drums." It also stated that the 30-day warranty was "in lieu of all other warranties and/or representations...."

When the copier was delivered to the buyer, it failed to perform properly. The buyer received the acceptance form but refused to sign it. After two unsuccessful service calls, the seller's repairman concluded that the copier needed a new photoconductor drum. The buyer was informed that a new drum would be ordered. After several months of waiting, the buyer notified the seller that unless the copier promptly was placed in operating condition, the purchase would be rescinded. Receiving no response, the buyer sued for a cash refund of the purchase price and to recover the cost of chemicals purchased for the machine.

The litigation began in the small claims department of the district court. There the buyer prevailed. The seller appealed to the district court, where the case was heard de novo. The buyer prevailed again. The district judge found that "on the date of delivery, the machine did not properly work, and does not work to this date." The judge held that both the 30-day warranty and the warranty of merchantability had been breached. The court concluded that the buyer was entitled to return the machine and to recover the purchase price, the cost of chemicals, and prejudgment interest at the rate of twelve percent under I.C. § 28–22–104 from the date when the buyer gave notice of his intent to rescind. This appeal followed.

We begin our analysis by noting that although the buyer sought "re-

---

1. The seller's business is incorporated as Sassy Office Systems, Inc. The president of the corporation, and general manager of the business, is Jack R. Peterson. The caption in this case lists Mr. Peterson individually because when the litigation began, he was named as the defendant "dba Sassy Office Systems, Inc." Later the "dba" term was deleted but the rest of the caption—including the reference to a single defendant—remained unchanged. In today's opinion we will refer to the corporation and Mr. Peterson collectively as the "seller."

2. Sometime after this transaction, the "barter club" became insolvent. The "credits" transferred to the seller could not be used. However, the district court found that the credits represented "good and valuable consideration." This finding has not been questioned on appeal.

scission," the Uniform Commercial Code does not employ that term. Rather, it refers to a buyer's "revocation of acceptance" of the goods. Comment 1 to I.C. § 28–2–608 explains:

The section no longer speaks of "rescission," a term capable of ambiguous application either to transfer of title to the goods or to the contract of sale and susceptible also of confusion with cancellation for cause of an executed or executory portion of the contract. The remedy under this section is instead referred to simply as "revocation of acceptance" of goods tendered under a contract for sale and involves no suggestion of "election" of any sort.

In *Peckham v. Larsen Chevrolet-Buick-Oldsmobile, Inc.,* 99 Idaho 675, 587 P.2d 816 (1978), our Supreme Court treated an action for rescission as a suit based upon revocation of acceptance under the Code. *See also Frontier Mobile Home Sales, Inc. v. Trigleth,* 256 Ark. 101, 505 S.W.2d 516 (1974). We will do the same in this case.

The buyer accepted physical delivery of the copier, although he refused to sign the acceptance form. He immediately notified the seller that the machine was malfunctioning. He retained possession of the copier while service calls were made and while the new photoconductor drum supposedly was on order. The Code allows a buyer to revoke acceptance if a product's "nonconformity substantially impairs its value to him" and if the buyer accepted it:

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

I.C. § 28–2–608(1). The district court made no specific determination that the buyer revoked acceptance. However, the record clearly shows that the defect in the copier substantially impaired its value and that the buyer retained possession of it while reasonably assuming that the defect would be cured. We find that acceptance was revoked. *See Pope v. Intermountain Gas Co.,* 103 Idaho 217, 225, 646 P.2d 988, 996 (1982) (appellate court may disregard absence of finding by trial court where record is clear and yields obvious answer).

The next question is whether the defect was one that *entitled* the buyer to revoke his acceptance. The question turns on the 30-day warranty and the warranty of merchantability. The seller has argued that neither warranty is applicable because any warranty of merchantability was wholly displaced by the 30-day warranty, and the 30-day warranty contained an exclusion for photoconductor drums. The district court was not persuaded. The judge ruled that the warranty of merchantability had not been displaced and, in any event, that the exclusion of drums from the 30-day warranty did not pertain to drums defective at the time of purchase. We agree with the judge's ruling on the warranty of merchantability; consequently, we need not decide whether his interpretation of the 30-day warranty also was correct.

The warranty of merchantability was expressly mentioned by the purchase agreement in this case. But even if it had not been mentioned, the warranty would have been implied. I.C. § 28–2–314(1). For goods to be merchantable they must be "fit for the ordinary purposes for which such goods are used...." I.C. § 28–2–314(2)(c). The warranty extends to used goods. *See* Comment 3 to section 28–2–314; *Dickerson v. Mountain View Equipment Co.,* 109 Idaho 711, 710 P.2d 621 (Ct.App.1985). It operates independently from any express warranty, unless it is effectively disclaimed.

No disclaimer is valid unless it particularly refers to merchantability, recites that the merchandise is sold "as is," or employs other language which "in common understanding calls the buyer's attention to the exclusion of warranties and makes it

plain that there is no implied warranty...." I.C. § 28-2-316. Here, the only alleged disclaimer is the statement in the acceptance form that the 30-day warranty was "in lieu of all other warranties and/or representations...." Assuming for the purpose of discussion that this form was binding upon the buyer, even though he did not sign it, the fact remains that merchantability is not mentioned. Neither was the phrase "as is" used. Finally, we believe the acceptance form failed to make it "plain" that no implied warranty existed. The acceptance form was ancillary to the purchase agreement, which expressly acknowledged the implied warranty of merchantability. The two instruments, taken together, were confusing at best and connoted no "plain" meaning.[3]

The question whether a warranty of merchantability has been breached is one of fact. *Martineau v. Walker*, 97 Idaho 246, 542 P.2d 1165 (1975). The standard of review is clear error. I.R.C.P. 52(a). As noted, the district court found the photocopier to be defective. It never worked properly. The seller argues that the machine made light copies, as might be expected from used equipment. However, the buyer's position, which the district court evidently accepted, was that the copies simply were not usable. We conclude that the judge did not clearly err by finding that the warranty of merchantability had been breached.

In a closely related argument, the seller contends that the court-imposed remedy for the breach—return of the machine, and recovery of the purchase price and cost of chemicals—was inappropriate. In the seller's view, the court merely should have awarded damages in a sum equal to the expense of replacing the photoconductor drum. However, I.C. § 28-2-711 provides that if a buyer justifiably revokes his acceptance of goods, he may "cancel" the purchase, "recovering so much of the price as had been paid." We find no error in the remedy selected by the court.

The judgment is affirmed. Costs to respondent, Lee. No attorney fees on appeal. *See Curtis v. Campbell*, 105 Idaho 705, 672 P.2d 1035 (1983).

WALTERS, C.J., and SWANSTROM, J., concur.

---

**3.** By reading the acceptance form and the purchase agreement together in this case, we intimate no view that the acceptance form, standing alone, would have contained an effective disclaimer. In general, an express warranty will be construed consistently with the warranty of merchantability. The two warranties serve different purposes. An express warranty usually guarantees satisfactory performance of a product in normal use for a designated period of time in the future. The implied warranty of merchantability guarantees that the product is fit for ordinary use at the time when it is delivered to the purchaser. *See generally* J. WHITE & R. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE § 12-7 (2d ed. 1980).